**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No.  3:24-mj-00092 (SLS) |
| | ) | |
| GEORGE G. CASANOVA, | ) | |
| | ) | |
| *Defendant*. | ) | |
| _____ | ) | |

**<u>MEMORANDUM OPINION</u>**

This matter comes before the Court on Defendant George G. Casanova's Motion for New Trial (the "Motion"). (ECF No. 33.)  The United States has responded (ECF No. 35), and Defendant has filed a reply (ECF No. 37).  The Court exercises jurisdiction under 28 U.S.C. § 636(a)(3)-(5) and 18 U.S.C. § 3401(b) with the consent of the parties.  (ECF No. 5.)

Defendant seeks a new trial under Federal Rule of Criminal Procedure 33.  (ECF No. 33, at 1.)  He argues that the Court violated his Sixth Amendment right to a unanimous, impartial jury by improperly excusing a juror when "there is a reasonable or substantial possibility that [the juror's] removal was based on his views of the case."  (ECF No. 33, at 1, 7.)  The Government responds that the Court properly dismissed the juror for misconduct—specifically, his unwillingness to deliberate with the other jurors and follow the Court's instructions.  (ECF No. 35, at 1.)

In this case, within minutes of retiring to the jury room to begin deliberations for the first time, the foreperson submitted a note indicating a disagreement on one count and that one juror had already stated they would not change their mind.  Despite repeating instructions on the duty to deliberate, the foreperson delivered a note again just minutes after the jury reconvened, stating that one juror refused to consider changing their opinion and no amount of deliberation would

convince them to do so.  Even though the Court dismissed the jury for the evening in the hopes that reconvening in the morning would change the dynamics, a third note confirmed no change. Thereafter, individual polling conducted in the presence of counsel and Defendant revealed the juror at issue—Juror No. 3.  Although Juror No. 3 gave conflicting answers at various times, he admitted at some point during the interview that he would not change his mind even if convinced his view was erroneous and/or that he was unwilling to make a decision based on an impartial review of the evidence and consideration of the views of the other jurors.  At the conclusion of the polling, Juror No. 3 then removed himself from the jury room and refused to reenter.

The Court found cause to remove Juror No. 3, specifically his refusal to deliberate with the other jurors and failure to follow the Court's instructions.  These are permissible grounds for removal which bear no causal link to Juror No. 3's views of Defendant's guilt or innocence. Moreover, considering the receipt of multiple jury notes in quick succession indicating a problem with one juror deliberating, the brevity of deliberations, and Juror No. 3's demeanor and statements in his colloquy with the Court, the Court finds no reasonable or substantial possibility that Juror No. 3 was removed based on his views of the case or the sufficiency of the government's evidence. For these reasons and those that follow, the Court will DENY Defendant's Motion.

## I.    PROCEDURAL HISTORY AND RELEVANT FACTUAL BACKGROUND

On December 19, 2024, the Government filed a three-count First Superseding Criminal Information charging Defendant with (1) operating a motor vehicle under the influence of alcohol, in violation of 18 U.S.C. § 13, assimilating Va. Code Ann. §§ 18.2-266 & 270(A) ("Count One"); (2) reckless driving, in violation of 18 U.S.C. § 13, assimilating Va. Code Ann. §§ 46.2-852 & 868 ("Count Two"); and (3) unlawful entry upon a military installation, in violation of 18 U.S.C. § 1382 ("Count Three").  (ECF No. 7.)

Trial commenced with a jury on February 24, 2025.  As part of its preliminary instructions to the jury, the Court directed, "[D]o not make up your mind about any of the questions in this case until you have heard all of the evidence and all of the law which you must apply to the evidence.  In other words, you should not be considering that until you begin your deliberations." (ECF No. 32, at 68:7-12.)  In addition, the Court instructed:

> [D]o not discuss the case among yourselves until I have instructed you on the law and you have gone to the jury room to make your decision at the end of the trial. Otherwise, without realizing it, you may start forming opinions before the trial is over.  It is important that you wait until all the evidence is received and you have heard my instructions on [the] rules of law before you deliberate among yourselves.

(ECF No. 32, at 75:5-12.)  The Court also instructed the jury "to keep an open mind until all of the evidence has been received and you have heard the views of your fellow jurors."  (ECF No. 32, at 77:1-3.)  The trial then proceeded in a normal fashion.

At the close of evidence, the Court issued final instructions to the jurors, again emphasizing the jury's duty to deliberate and impartially consider the evidence:

> It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for himself and herself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and to change your opinion if convinced it is erroneous.

(ECF No. 32, at 247:21-248:5.)

The jurors retired to the jury room after hearing closing arguments and the Court's final instructions at 6:34 p.m. on February 24, 2025.  (ECF No. 32, at 253:14.)  Just a few (no more than five) minutes later, and before the jury instructions and exhibits were even delivered to the jury room, the Court received a note from the foreperson stating, "What do we do – One juror disagrees on Count One. States they will not change their mind."  (ECF No. 22-1, at 2 (hereinafter "Jury Note A"); ECF No. 29, at 43:22-44:4.)  After the Court read the note to the parties, it emphasized

that the note came "early in the deliberation process" and proposed reinstructing the jury on their duty to deliberate. (ECF No. 32, at 253:21-255:25.) With the consent of the parties, the Court reinstructed the jury on their duty to deliberate (ECF No. 32, at 254:19-255:25), and the jury again retired to the jury room around 7:09 p.m. (ECF No. 22 (indicating the jury retired to the jury room at 7:09 p.m.); ECF No. 32, at 256:4 (indicating the jury retired around 7:08 p.m.).)

At 7:13 p.m., about four minutes later, the foreperson submitted a second note, stating: "It has been stated that the juror is unwilling to consider changing their opinion. No amount of deliberation will convince them otherwise" and "[t]he only reason juror would change is to cave to majority." (ECF No. 22-1, at 1 (hereinafter "Jury Note B").) After reading Jury Note B to the parties, the Court stated that it would adjourn for the evening and reconvene the jury in the morning. (ECF No. 32, at 256:14-20.) At that time, the jury returned to the courtroom, and the Court stated:

> Given the time of the night or the evening, [the Court] think[s] it best to go ahead and adjourn for the evening, recess, and resume deliberations in the morning, when everyone can be as leisurely as they desire in the deliberations and make sure that the jury takes all the time that [it] feel[s] is necessary to discuss the evidence in the case and discuss with [the other] jurors your perspective views.

(ECF No. 32, at 257:8-14.)

The next morning, on February 25, 2025, the full jury did not arrive until around 9:20 a.m. (ECF No. 29, at 4:2-3.) At 9:50 a.m., thirty minutes later, the foreperson sent a third note, stating: "We cannot come to a unanimous agreement. I request an individual poll from the judge as to whether a single juror feels further deliberations will result in a different result." (ECF No. 23-2, at 1 (hereinafter "Jury Note C").)

Thereafter, the Court addressed the parties and summarized the status of the proceedings as follows:

The jury retired yesterday at 6:34 p.m.  They began deliberations.  And[,] within minutes, and before the jury had received the exhibit binder and the jury instructions, a question was submitted.  That question was read and is part of the record, and indicated that one juror did not want to change their mind.

The juror was then --  the whole jury was then brought in and reinstructed to deliberate, and on the duty to deliberate.  The jury retired at 7:09 p.m. to resume deliberations.  And then at 7:13 p.m. a second note was provided to [t]he Court that stated that a juror was unwilling to consider changing their opinion and that further deliberations would be ineffective.

That note again was read and placed on the record.

Then we stopped for the evening with instructions not to discuss the case.

The jury arrived this morning.  They were not able to begin deliberations until 9:20 [a.m.] because not everyone was here.  And then I had distributed an instruction that I propose giving the jury again reinforcing the duties to deliberate, but before I could take the bench and discuss that with you[,] we got a new note that was submitted at 9:50 [a.m.]  This note says[:] "We cannot come to a unanimous agreement.  I request an individual poll from the judge as to whether a single juror feels further deliberations will result in a different result."

So[,] we will now put that on the record.

Yesterday evening, the time between retiring to the jury room and getting the note was within minutes.  Within *five* minutes.

And then this morning it was about *30* minutes.  The timing reflects that deliberations are *not* occurring.  And we need to figure out how to correct that in court.

So[,] I have now distributed an Allen charge for review that I intend to read to the jury.

I also have, given that it doesn't appear that deliberations are not [sic] happening, and given that we have had now *three notes indicating that deliberations are not happening,* I am inclined to poll the jurors and see if the juror is able to comply with the requirement to deliberate.

(ECF No. 29, at 3:11-5:3 (emphases added).)  Without objection from either party, the Court issued

an *Allen* charge[1] to the jury and then proceeded to individually poll each juror in the presence of

---

[1] Defendant objected to discrete language in a draft *Allen* charge that was presented to the parties. (ECF No. at 29, at 5:16-6:21.)  The Court directed Defendant to propose a revised *Allen* charge

counsel and Defendant.  (ECF No. 29, at 5:13, 6:22, 8:19-30:24.)  Neither the Government nor Defendant objected to the Court's proposed polling questions.  (ECF No. 29, at 8:6, 8:14-15.)

The polling results from eleven jurors were generally unremarkable.  (*See* ECF No. 29, at 11:14-24:15, 26:8-30:24.)  Those jurors answered the Court's questions credibly and without hesitation, and there was no indication that those jurors had any issues complying with their oath. However, one juror, Juror No. 3, exhibited a different demeanor from the others and admitted an inability to re-examine his views or change an opinion even if convinced it was erroneous:

> [THE COURT:]  I will also remind you that you took an oath yesterday to answer the questions truthfully, and you remain under oath.  Do you understand that?
>
> A JUROR:  Yes.
>
> THE COURT:  Do you understand The Court's jury instructions?
>
> A JUROR:  Yes.
>
> THE COURT:  Are you able to comply with those instructions?
>
> A JUROR:  Yes.
>
> THE COURT:  In part, those instructions require jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so without violence to individual judgment.  They also require each juror to decide the case for himself and herself but to do so only after an impartial consideration of the evidence in the case with your fellow jurors.  Do you understand your duty to deliberate?
>
> A JUROR:  Yes.
>
> THE COURT:  Are you able to deliberate with the other jurors?
>
> A JUROR:  Yes.
>
> THE COURT: *Are you able and/or willing to re-examine your own views and to change your opinion if convinced it is erroneous without surrendering your honest conviction?*

---

addressing his concerns.  (ECF No. 29, at 7:1-3.)  The Court issued the revised *Allen* charge proposed by Defendant, without objection from the Government.  (ECF No. 29, at 7:16-25.)

A JUROR:  *No.*

THE COURT:  All right.  In your opinion is the jury unable to agree on a verdict as to all counts?

A JUROR:  Yes.

(ECF No. 29, at 24:17-26:4 (emphasis added).)

After completing the polling, the Court read a fourth jury note, received during polling, into the record.  The fourth jury note stated: "Procedural question.  We have a unanimous verdict on 2 of the 3 counts.  Does a non-unanimous vote on one count void the verdict on the other 2 counts?"  (ECF No. 23-2, at 2; ECF No. 29, at 31:5-7.)   The Court then directed the parties to consider "whether there [was] a juror who [was] not willing, and [was] not complying with their obligations to deliberate" and indicated its concern that "within minutes after retiring[,] a juror ma[de] up their mind and [was] refusing to re-examine."  (ECF No. 29, at 31:11-16.)

The Court and the parties all identified Juror No. 3 as the subject of the jury notes and agreed that his response to at least one of the polling questions was concerning.  (ECF No. 29, at 32:1-33:25.)  The parties jointly requested repolling of Juror No. 3 to make sure he understood the questions being asked.  (ECF No. 29, at 32:14-17, 33:20-22.)   Depending on the results of repolling, the parties stated that it may be appropriate to declare a mistrial as to one of the three counts and have the jury deliberate on the remaining two counts.  (ECF No. 29, at 32:18-24, 34:10-12.)

In response to the request for repolling, the Court said: "I have a juror who has now indicated an unwillingness to re-examine their own opinion, even if convinced it is erroneous.  And I have an alternate juror on standby who can be brought in if I have one juror who is not able to fulfill their oath.  Let me hear your position on that."  (ECF No. 29, at 33:1-5.)  The Government stated that "it could very well be appropriate to bring in the alternate juror and then have the jury

re-deliberate on all counts" if Juror No. 3 understood the questions asked during initial polling. (ECF No. 29, at 33:11-13.)  Defendant took the position that repolling would allow the Court "to make sure [Juror No. 3] actually fully understood the question that was being asked of him before we proceed on the understanding that juror number three has in fact said that he is unable to follow through with the instructions and his oath."  (ECF No. 29, at 33:21-25.)  Therefore, Defendant asked that the Court not consider calling in the alternate until after repolling Juror No. 3.  (ECF No. 29, at 34:5-7.)

The Court granted the joint request to repoll Juror No. 3, again with counsel and Defendant present:

> [THE COURT:]  I wanted to follow up on a few polling questions that I asked everyone just to make sure there was no confusion.  I will remind you that you took an oath to answer the Court[] truthfully and you remain under oath.  Do you understand that, sir?
>
> A JUROR:  Yes.
>
> THE COURT:  All right.  I asked you earlier if you are able to -- if you understand your duty to deliberate?  Do you understand your duty to deliberate?
>
> A JUROR:  Yes.
>
> THE COURT:  And are you able to deliberate with the other jurors?
>
> A JUROR:  To be honest, yes.
>
> THE COURT:  I sensed hesitation earlier, which concerned me, which is part of the purpose of asking these questions.  So if can not answer yes or no to that question, then, please.
>
> A JUROR:  We have -- since deliberations I have an opinion that differs from the rest of the group and I don't feel that it is appropriate for me to change that opinion.
>
> THE COURT:  All right.  Are you able and/or willing to re-examine your own views and to change your opinion if convinced it is erroneous?
>
> A JUROR:  Could you repeat that?
>
> THE COURT:  Are you able and/or willing to re-examine your own views and to change your opinion if convinced it is erroneous?

A JUROR:  Yes, if I was convinced it was erroneous, yes.

THE COURT:  All right.  *Are you able to reach a decision for yourself after an impartial consideration of the evidence in the case with your fellow jurors?*

A JUROR:  *No.*

(ECF No. 29, at 34:21-36:6 (emphasis added).)

After the repolling, both parties took the position that Juror No. 3 should not be struck for cause because he clarified his prior answer and now indicated he would be willing to reexamine his own views and change his opinion if convinced it was erroneous.  (ECF No. 29, at 36:21-37:18.) Defendant further took the position that the repolling indicated that "the jury had in fact been deliberating and that he just happened to have a different view from the rest of the jurors. . . . And the jury is essentially deadlocked as to count one."  (ECF No. 29, at 37:7-9, 37:17-18.)

The Court disagreed, stating "it does not appear to me that actual deliberations have happened."  (ECF No. 29, at 37:20-21.)  The Court further explained:

The first question came in minutes after [the jury] had retired.  And [the first question] was indicating one juror would not change their mind, and had stated he would not change their mind.  *That is not deliberation*.  The jury was instructed again on the duty to deliberate.  Retired at 7:09 p.m.  7:13 p.m., so four minutes later, a second note was submitted that said a juror is unwilling to consider changing their opinion, and that further deliberations would not be effective.  A very similar note [was received] shortly after they resumed deliberations this morning.

We have now conducted polling.  I had one juror who indicated that they are able to deliberate with other jurors, but hesitated, and on re-polling has clarified that they are deliberating, but they are not -- they are not actually deliberating.

I have gotten conflicting answers about a willingness to re-examine their own opinion.  I have gotten a, "no, I am not willing to re-examine my own opinion and to change my opinion even if it is erroneous."  I have gotten after some hesitation a "yes."  And then I have been told, but I am not -- I am not making a decision after impartial consideration of the evidence in the case with my fellow jurors.

When I asked if the juror would make a decision for himself or herself after an impartial consideration of the evidence in the case with the fellow jurors, the answer was "no."  It seems to me like I have a juror who, based on demeanor, based on the answers, conflicting answers, hesitation, followed by answers who is not willing to

deliberate, and is not willing to consider other thoughts or re-examine [their] own opinion or even talk about [their] own opinion. *Deliberation is not three minutes in a jury room. Deliberation is not another four minutes in a jury room. That is not enough time to actually conduct deliberations.*

So I don't understand, I guess, the position that we have a juror who is able to undergo their oath, and commit their oath, and fulfill their oath. And not to change their mind just to reach a verdict, but to actually deliberate and make up their mind after considering the evidence and taking an impartial view and hearing of others' opinions.

(ECF No. 29, at 37:20-39:13 (emphases added).) The Court also noted again that it had an alternate juror who could replace a "juror who is not able to fulfill their oath and keep an open mind." (ECF No. 29, at 39:18-19.) The Court asked the parties for their response to these concerns. (ECF No. 29, at 39:15-21.)

Defendant sought to keep the "jury pool as is." (ECF No. 29, at 40:19-20.) Although Defendant's counsel acknowledged that he "may have missed [Juror No. 3]'s last response" (ECF No. 29, at 39:22-23)—that is, the negative response to the question, "Are you able to reach a decision for yourself after an impartial consideration of the evidence in the case with your fellow jurors?" (ECF No. 29, at 36:3-6), Defendant took the position that Juror No. 3's answers on repolling had rehabilitated his prior concerning response regarding his ability to keep an open mind and change his opinion if convinced it was erroneous. (ECF No. 29, at 37:5-7, 40:3-5.) Defendant also agreed that Jury Note A "came back almost immediately after the jury had returned to deliberate," but took the position that "certainly at that point we had no indication the jury had properly deliberated to reach that conclusion." (ECF No. 29, at 40:7-11.)

The Government agreed that Juror No. 3 on repolling had indicated a willingness to deliberate and change his mind if he determined his opinion was erroneous. (ECF No. 29, at 41:1-5.) The Government, however, also acknowledged the Court's concerns and stated it had   no

objection to striking Juror No. 3 for cause and replacing him with an alternate juror. (ECF No. 29, at 40:23-41:11.)

At that time, the Courtroom Security Officer informed the Court that Juror No. 3 was standing in the vestibule and "[did] not feel comfortable going back to the jury room." (ECF No. 29, at 41:14-15.) Juror No. 3 was then brought into the courtroom and questioned by the Court. Juror No. 3 stated he was not comfortable returning to the jury room to deliberate with the other jurors. (ECF No. 29, at 42:3-23.) The Court then placed Juror No. 3 in a separate jury room. (ECF No. 29, at 42:25-43:2.)

Based on this further development, the Government agreed it would be "appropriate to recall the alternate juror and replace" Juror No. 3. (ECF No. 29, at 43:9-12.) Defendant maintained his objection to removing Juror No. 3 for cause and instead argued that the Court should declare a mistrial on Count One and allow the jury to return a verdict on Counts Two and Three. (ECF No. 29, at 43:14-19.)

The Court overruled Defendant's objection and struck Juror No. 3 for cause, explaining:

[W]ithin minutes after the jury retired to start initial deliberations a note was submitted[,] signed by the foreperson, and this is before the exhibits had been sent to the jury and before the final jury instructions had been sent to the jury room. That stated, what do we do? One juror disagreed on count one. States they will not change their mind.

So within minutes of starting deliberations[,] I have an indication that a juror is not willing to change their mind, before exhibits had been sent back, before jury instructions, *within minutes of the deliberation*.

The jury was brought in. I provided instructions on the duty to deliberate. The jury retired at 7:09. *Within four minutes*, at 7:13[,] I received a second note.

"Juror is unwilling to consider changing their opinion. No amount of deliberation will convince them otherwise. The only reason juror would change is to cave to majority."

So[,] at this time we had maybe a *total of ten minutes of deliberation* when I received the second note. *That is not true deliberation*. That is not a consideration

of all the evidence that was presented about the exhibits before the Court, and the jury instructions that were before the Court.  At that time[,] we adjourned for [the] evening.

The jury, the full jury was not here until 9:20 this morning.

               ***

[W]ithin about 30 minutes of deliberation this morning a note was received, "We can not come to a unanimous agreement.  I request an individual poll from the Judge as to whether a single juror feels further deliberation will result in a different result."

*So[,] this is maybe a total of 40 minutes of deliberation at this time.*

After instructing, providing the Allen charge, I instructed the jury that deliberations could not resume until after the individual polling had been completed.  I understand that they had just started resuming those deliberations, and immediately it was heated at a discomfort level, and that is when the juror stepped out.  So[,] deliberations have not actually happened in this case.  After individual polling I received virtually unanimous answers from everyone except juror number three.

               ***

[Juror No. 3]'s demeanor was different than the other jurors.  He was uncomfortable, he hesitated in answering my questions about the duty to deliberate.  He told me, no, he would not be willing to change his opinion even if convinced erroneous.  On re-polling he again showed hesitation on his ability to deliberate.  He again after hesitating changed his answer to whether he would be willing to re-examine his own views and change his opinion if proven to be erroneous.  And then when I asked if he would decide the case for himself or herself only after an impartial consideration of the evidence in the case with your fellow jurors[,] he told me "No."  And with that record[,] there is cause to strike [Juror No. 3].

(ECF No. 29, at 43:23-46:16.)

The Court replaced Juror No. 3 with the alternate juror and reinstructed the entire jury panel, including an instruction that the jury must start deliberations anew.  About an hour later, the jury returned a verdict, convicting Defendant on all three counts.

## II.    STANDARD OF REVIEW

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  The Court "should exercise its discretion to award a new trial sparingly."  *United States v. Smith*, No. 24-4330, 2025 WL 1190069,

at *2 (4th Cir. Apr. 24, 2025) (internal quotation marks omitted). "A motion for new trial by virtue of juror bias or other juror-related problems is a motion falling within the ambit of the phrase 'in the interest of justice.'" *United States v. Lawhorne*, 29 F. Supp. 2d 292, 302 (E.D. Va. 1998). Here, Defendant seeks a new trial under Rule 33 of the Federal Rules of Criminal Procedure based on his contention that the removal of Juror No. 3 violated his Sixth Amendment right to a unanimous, impartial jury. (ECF No. 33, at 1.)

Under Rule 23(b) of the Federal Rules of Criminal Procedure, the Court may excuse a juror for "good cause" after the jury has retired to deliberate. Fed. R. Crim. P. 23(b). Upon excusing a juror for good cause, the Court may "permit a jury of 11 persons to return a verdict," Fed. R. Crim. P. 23(b)(3), or replace the excused juror who is unable to perform their duties with an alternate juror, Fed. R. Crim. P. 24(c)(1). The Court enjoys considerable discretion in determining whether good cause exists to excuse a juror. *See United States v. Laffitte*, 121 F.4th 472, 488 (quoting *United Sates v. Basham*, 561 F.3d 302, 321 n.9 (4th Cir. 2009)) ("The Fourth Circuit follows the view that the trial court may deal with [claims of juror misconduct] as it feels the particular circumstances require and only reverse[s] for abuse of discretion.").

At the same time, the Sixth Amendment right to an impartial jury "includes a requirement that the verdict should be unanimous." *Id.* at 487-88 (quoting *Ramos v. Louisiana*, 590 U.S. 83, 92 (2020)). To balance the Court's discretion in addressing claims of jury misconduct with the Defendant's Sixth Amendment right to an unanimous verdict, the Court "may not dismiss a juror during deliberations if the request for discharge stems from doubts the juror harbors about the sufficiency of the government evidence." *Id.* at 488 (quoting *United States v. Brown*, 823 F.2d 591, 596 (D.C. Cir. 1987)). "The relevant inquiry is therefore whether [the juror's] dismissal was based on [his] views of the case, and thus a violation of [Defendant's] Sixth Amendment right to

an impartial jury, or instead, permissibly based on a separate ground bearing no causal link to [his] views of guilt or innocence." *Id.* In setting forth the "standard used to evaluate this inquiry," the Fourth Circuit has stated that a juror may not be removed where "there is a reasonable [or] substantial possibility that [the] request for removal stemmed from [the juror's] view of the case." *Id.* at 488, 489.[2]

## III. ANALYSIS

Defendant argues that the Court's removal of Juror No. 3 violated his Sixth Amendment right to an impartial jury. (ECF No. 33, at 7-8.) Having carefully reviewed the briefing, applicable case law, and the record, the Court finds no such Constitutional violation. Juror No. 3's removal had nothing to do with his view of the sufficiency of the Government's evidence. Instead, the Court removed Juror No. 3 based on his refusal to deliberate and follow the Court's instructions.

All jurors take an oath. Part of that oath requires the jurors to deliberate. True deliberation involves the jurors engaging in discussions, reviewing the evidence and law with each other, considering each other's views on the evidence, and trying to reach a verdict. "'[A] juror who

---

[2] The Fourth Circuit adopted this standard after evaluating standards employed in other circuits. *Laffitte*, 121 F.4th at 488. The D.C. Circuit first applied an "*any* possibility" standard, holding that "if the record evidence discloses *any* possibility that the request to discharge stems from the juror's view of the sufficiency of the government's evidence, the court must deny the request." *Brown*, 823 F.2d at 596 (emphasis added). Later, the D.C. Circuit redefined the standard, holding that a juror may be excused when there is no "'tangible' or 'appreciable possibility'" that the allegations of misconduct stem from the juror's view of the evidence. *United States v. Wilkerson*, 966 F.3d 828, 838 (D.C. Cir. 2020). The Third, Sixth, and Ninth Circuits have adopted a "reasonable possibility" standard. *See United States v. Kemp*, 500 F.3d 257, 304 (3d Cir. 2007); *United States v. Ozomaro*, 44 F.4th 538, 545-46 (6th Cir. 2022); *United States v. Symington*, 195 F.3d 1080, 1087-88 (9th Cir. 1999). The Eleventh Circuit has articulated a "substantial possibility" standard. *United States v. Abbell*, 271 F.3d 1286, 1302-04 (11th Cir. 2001) (holding "a juror should be excused only when no 'substantial possibility' exists that she is basing her decision on the sufficiency of the evidence"). The Fourth Circuit declined to decide whether it would apply the reasonable possibility standard or the substantial possibility standard, "assuming there is a difference between the two." *Laffitte*, 121 F.4th at 489. Defendant's argument fails under either standard.

refuses to deliberate . . . violates the sworn jury oath and prevents the jury from fulfilling its constitutional role.'" *United States v. Kemp*, 500 F.3d at 301 (3d Cir. 2007) (quoting *United States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006)). "It is well recognized that refusal to follow the Court's instructions and to participate in deliberations is sufficiently good cause to excuse a juror." *United States v. Ray*, No. 3:21-cr-57, 2023 WL 5616190, at *6 (S.D.W. Va. Aug. 30, 2023).

Here, the record clearly establishes that Juror No. 3 was not able or willing to discharge his duty to deliberate and decide the case based on the evidence and after considering the views of other jurors. This constitutes "a separate ground" to remove Juror No. 3 "bearing no causal link to [his] views of guilt or innocence." *Laffitte*, 121 F.4th at 488. Moreover, there is no reasonable or substantial possibility that the removal request stemmed from Juror No. 3's view of the evidence. *Id.* Because the Court finds it did not violate Defendant's right to a fair and impartial jury, the Court will deny his Motion.

> **A.    The record establishes good cause for the dismissal of Juror No. 3 based on his failure and unwillingness to fulfill his oath—a separate ground bearing no causal link to his views on Defendant's guilt or innocence.**

The timing and substance of the jury notes, the brevity of the jury's "deliberations," Juror No. 3's answers and demeanor during polling, and his unilateral decision to remove himself from the jury room all support the Court's finding that good cause existed to remove Juror No. 3 based on his inability to fulfill his obligation to deliberate and follow the Court's instructions, a permissible ground which bears "no causal link to [his] views of guilt or innocence." *Id.*

> 1.   The Timing and Substance of the Jury Notes

First, the timing and content of the jury notes show that Juror No. 3 failed to comply with the Court's instructions from the onset of jury deliberations. Within *minutes* of the jury retiring to start deliberations (ECF No. 29, at 43:23-25), the foreperson submitted Jury Note A, stating: "What

do we do—one juror disagrees on count one. States they will not change their mind" (ECF No. 22-1, at 2). The Court received this note *before* the jury instructions and evidence had been delivered to the jury room. (ECF No. 29, at 43:25-44:2.) Jury Note A suggests that a juror was refusing to deliberate and comply with the Court's instructions from the very beginning.

After reinstructing the full jury on the duty to deliberate (ECF No. 32, at 254:19-255:25), the foreperson submitted Jury Note B about *four* minutes later (ECF No. 29, at 44:10-11), stating: "It has been stated that the juror is unwilling to consider changing their opinion. No amount of deliberation will convince them otherwise." (ECF No. 22-1, at 1.) The timing and substance of this note too suggests an ongoing refusal to deliberate by the juror and continued violation of his oath.

Because the foreperson had reported twice that one juror was unwilling and/or refusing to deliberate in such a short span of time, the Court opted to resume deliberations the next day to "make sure that the jury t[ook] all the time that [it] fe[lt] [was] necessary to discuss the evidence in the case and discuss with [the other] jurors [their] perspective views." (ECF No. 32, at 257:8-14.) The next day, within thirty minutes of the full jury convening (ECF No. 29, at 4:2-4), the Court received Jury Note C, in which the foreperson requested individual polling "as to whether a single juror feels further deliberation will result in a different result." (ECF No. 23-2, at 1.)

Reviewed together, the content and timing of these notes show that one juror had not only made up their mind about something at the outset of deliberations (and before an impartial review of the evidence and discussions with the other jurors could be had) but also immediately stated that no amount of discussions would change their opinion. Even after being reinstructed on the duty to deliberate and recessing for the evening, the juror's refusal to deliberate in compliance with the Court's instructions continued.

2.  The Brevity of the Jury's "Deliberations"

The brevity of jury discussions further supports the Court's finding that meaningful deliberations had not taken place.  While the Court recognizes that this is a three-count misdemeanor case, the Government presented the testimony of five witnesses, as well as five exhibits, including one video exhibit and four written exhibits totaling 73 pages.  (ECF No. 23-1.) In addition, jury instructions (excluding the *Allen* charge) totaled 47 pages.  (ECF No. 27.)  It took about five hours for the parties to present this case to the jury.  (ECF No. 22; ECF No. 32, at 77:12, 123:7, 190:25, 204:4, 253:14.)  Thus, the no more than five minutes of deliberations that preceded the juror's statement that "they will not change their mind" (ECF No. 22-1, at 2) was wholly insufficient for the jury to have impartially reviewed the evidence (including the exhibits which had not yet been sent back to the jury room), considered the views of other jurors, and reviewed the jury instructions (which again had not yet been sent back to the jury room).[3]  The same applies to the additional four-minute time span between the Court's reinstruction on the duty to deliberate and Jury Note B.

The timing of the jury notes reflects about 40 minutes of attempted deliberations interrupted by repeated notification to the Court that a juror refused and continued to refuse to deliberate.  On this record, that time is insufficient to constitute true and meaningful deliberations. The Court recognizes that the jury sat together longer than those 40 minutes while awaiting responses to the jury notes.  Defendant took the position that "[w]e ultimately just don't know exactly what has been happening in the jury room" during that time.  (ECF No. 29, at 40:12-13.)

---

[3] Defendant appears to concede this: "I would also note my position is that while I agree with the record that a question came back almost immediately after the jury had returned to deliberate indicating that one juror was unwilling to change their mind, certainly at that point we had no indication the jury had properly deliberated to reach that conclusion."  (ECF No. 29, at 40:6-11.)

While that is true, the record establishes what one juror was *not* doing during that time frame—deliberating. That failure to deliberate as required by the Court's instructions justifies removal. *United States v. Baker*, 262 F.3d 124 (2d Cir. 2001) (removal of juror proper where "within a half hour [she] determined that she would not deliberate with her fellow jurors").

### 3.  Juror No. 3's Responses and Demeanor During Polling

Juror No. 3's concerning and conflicting statements, as well as his hesitant, uncomfortable demeanor during polling allowed the parties and the Court to readily identify him as the juror referenced in Juror Notes A, B, and C. During the initial polling, Juror No. 3 hesitated before stating that he felt able to deliberate with the other jurors. (ECF No. 29, at 25:18-20.) He also unequivocally stated, in direct contradiction to the Court's instructions, that he was *not* able or willing to reexamine his views and change his opinion if convinced it was erroneous. (ECF No. 29, at 25:21-25; ECF No. 32, at 248:3-5 ("In the course of your deliberations, do not hesitate to reexamine your own views and to change your opinion if convinced it is erroneous.").) Defendant, by counsel, agreed that Juror No. 3's response raised concerns as to whether "he is unable to follow through with the instructions and his oath." (ECF No. 29, at 33:24-25.)

During repolling requested by the parties, Juror No. 3 gave different answers to three questions. First, when asked whether he felt able to deliberate with the other jurors, the Court noted Juror No. 3's hesitation in answering the question during the initial polling. (ECF No. 29, at 35:9-10.) Juror No. 3 again hesitated and explained that "since deliberations[,] I have an opinion that differs from the rest of the group and I don't feel that it is appropriate for me to change that opinion." (ECF No. 29, at 35:13-16.) Second, when asked again whether he was able and/or willing to re-examine his own views and to change his opinion if convinced it was erroneous, Juror No. 3 asked the Court to repeat the question and then, after additional hesitation, changed his

previous "no" to a "yes." (*Compare* ECF No. 29, at 25:18-25 *with* ECF No. 29, at 35:22-36:1.)

Third, when asked whether he was able to reach a decision for himself *after* an impartial

consideration of the evidence in the case with his fellow jurors, Juror No. 3 changed his prior "yes"

response to "no." (ECF No. 29, at 36:3-6.) Far from clarifying matters, the repolling cast further

doubt on Juror No. 3's willingness and ability to fulfill his oath.

The Court found cause to strike Juror No. 3 based in part on his demeanor coupled with

his admissions:

> [Juror No. 3]'s demeanor was different than the other jurors. He was
> uncomfortable, he hesitated in answering my questions about the duty to deliberate.
> He told me, no, he would not be willing to change his opinion even if convinced
> erroneous. On re-polling he again showed hesitation on his ability to deliberate.
> He again after hesitating changed his answer to whether he would be willing to re-
> examine his own views and change his opinion if proven to be erroneous. And then
> when I asked if he would decide the case for himself or herself only after an
> impartial consideration of the evidence in the case with your fellow jurors[,] he told
> me "No." And with that record[,] there is cause to strike [Juror No. 3].

(ECF No. 29, at 46:3-46:16.) *See also United States v. Gutierrez*, 963 F.3d 320, 334 (4th Cir.

2020) ("The trial judge is in the best position to make judgments about the impartiality and

credibility of potential jurors based on the judge's own evaluations of demeanor evidence and of

responses to questions." (internal citation omitted)); *Skilling v. United States*, 561 U.S. 358, 386

(2010) ("Reviewing courts are properly resistant to second-guessing the trial judge's estimation of

a juror's impartiality, for that judge's appraisal is ordinarily influenced by a host of factors

impossible to capture fully in the record—among them, the prospective juror's inflection, sincerity,

demeanor, candor, body language, and apprehension of duty."). Juror No. 3's inconsistent and

conflicting responses to the Court's questioning coupled with his demeanor and hesitation supports

his removal for cause based on his failure to deliberate and follow the Court's instructions, which

included *multiple* instructions on a juror's duty to deliberate with the other jurors and impartially

consider the evidence. (*See* ECF No. 32, at 68:7-77:3 (preliminary jury instructions), 247:21-

248:5 (final jury instructions), 254:19-25 (reinstruction on duty to deliberate); ECF No. 29, at 8:19-11:12 (*Allen* charge).)

4.  Juror No. 3's Unilateral Decision to Remove Himself from the Jury Room

After polling, Juror No. 3 unilaterally removed himself [4] from the jury room and chose to stand in the vestibule between the jury room and courtroom instead of returning to the jury room. (ECF No. 29, at 41:14-15.)  Given this development, the Court had no choice but to place him in a separate jury room.[5]  This further supports the fact that Juror No. 3 was not removed for his nonconforming view of the evidence but his admitted and ongoing refusal to deliberate with the other jurors and comply with the Court's instructions.

**B.    There is no reasonable or substantial possibility that the removal stemmed from Juror No. 3's view of the evidence.**

Because the Court removed Juror No. 3 based on his admitted inability to deliberate and follow the Court's instructions, there is no reasonable or substantial possibility that the removal request stemmed from Juror No. 3's view of the evidence.  *Laffitte*, 121 F.4th at 488.

Neither the jury notes nor the polling answers indicate that Juror No. 3 had evidentiary-based concerns regarding the sufficiency of the Government's case.   Although references were made to an opinion that differed from other jurors, nothing in the record suggests whether that

---

[4] Defendant attempts to paint this as a "request to be removed" which "arose from the anxiety that he experienced because of his disagreement with the other jurors about the evidence in the case." (ECF No. 33, at 8.)  The record does not support that assertion.  Instead, it shows not a request to be removed, but that Juror No. 3 unilaterally decided to remove himself from the jury room.  While Juror No. 3 cited "discomfort" as a reason for removing himself from the jury, his removal further supports the Court's finding that Juror No. 3 had failed, and continued to fail, to comply with his oath to deliberate and follow the Court's instructions.

[5] Defendant argues that the Court should have declared a mistrial on Count One and allowed the jury to return a verdict on the remaining counts.  (ECF No. 33, at 6; *see also* ECF No. 29, at 43:14-18.)  It is unclear how the jury could return a verdict on any count when Juror No. 3 effectively removed himself by refusing to enter the jury room and continue deliberations.  Juror No. 3's refusal to be in the same room as the other jurors would certainly prevent the jury from returning any verdict.

20

opinion pertained to the juror's view of the sufficiency of the evidence as opposed to something else, including the juror's beliefs, biases, experiences, or opinion on the governing law. Despite Defendant's assertion otherwise, this is far from an "unambiguous statement about why he could not agree with the other 11 jurors to convict [Defendant] on Count One." (ECF No. 33, at 7.)

In any event, there is *no* possibility that the removal was based on Juror No. 3's view of the evidence because the record shows that his refusal to deliberate came *before* a sufficient time had passed to even conduct an impartial review of the evidence, consider the views of fellow jurors and the applicable law, and then arrive at a decision regarding the Defendant's guilt or innocence. Considering the brevity of the deliberations and the timing and sequence of the jury notes, the record is "not suggestive of a hold-out juror based on the evidence." *United States. v. Wilkerson*, 966 F.3d 828, 836 (D.C. Cir. 2020). Instead, it supports the removal for cause based on Juror No. 3's failure to deliberate and follow the Court's instructions.

Despite the Court's attempt to correct this issue through further instructions, a recess for the evening, and individual polling, Juror No. 3 himself admitted he would not follow the Court's instructions regarding his duty to deliberate, although he also hedged, hesitated, and contradicted himself at the same time. This culminated in Juror No. 3 removing himself from the jury room. This record reveals no reasonable or substantial possibility that the removal of Juror No. 3 stemmed from his view of the evidence.

1. The facts of this case are distinguishable from those presented in *Laffitte*.

Defendant contends that *United States v. Laffitte*, 121 F.4th 472 (4th Cir. 2024), requires a new trial and supports his argument that "there is a reasonable or substantial possibility that Juror

#3's removal was based on his views of the case." (ECF No. 33, at 7.)  The Court disagrees and finds *Laffitte* distinguishable.

In *Laffitte*, following more than eight hours of deliberations, a juror requested that the court "call a[n] alternative" based on her "experiencing anxiety" and her inability "to clearly make [her] decision." 121 F.4th at 479.  During an *in camera* interview with the court, the juror explained: "I have my decisions that I made.  But I started to feel very anxious due to some of the reactions to my decisions." *Id.* at 480.  When asked if she wanted to be replaced with an alternate, the juror said: "Your Honor, I *don't* want to be replaced, but—and I'm usually very strong when someone is butting up, but I don't want to be trialed [sic] for my decision." *Id.* (emphasis added).  When asked if she could perform her duties as a juror, she answered, "At this point, no." *Id.*  The court then dismissed that juror "sua sponte from the jury without notice to, or an opportunity to hear argument from, the parties." *Id.* at 480-81. Based on those facts, the Fourth Circuit found there was a reasonable and substantial possibility that the juror's request for removal stemmed from her views of the case and remanded the case for a new trial. *Id.* at 489-90.  In doing so though, the Fourth Circuit recognized that the facts in *Laffitte* presented "a close call" but decided to "'err on the side of Sixth-Amendment caution.'" *Id.* at 490 (*Wilkerson*, 966 F.3d at 836 (D.C. Cir. 2020)).

The Court finds *Laffitte* distinguishable on multiple grounds.  First, the juror in *Laffitte* plainly stated during the *in camera* interview that her inquiry about being replaced by an alternate stemmed from her views of evidence. *Id.* at 489.  Specifically, she said: "I've been taking notes clearly.  I have my decisions that I made.  But I started to feel very anxious **due to some of the reactions to my decision**." *Id.* (emphasis in original).  She further explained: "**I'm usually very strong when someone is butting up, but I don't want to be trialed [sic] for my decision**." *Id.* (emphasis in original).  The Fourth Circuit characterized these statements and their chronology as

"crucial" and found that the juror's "request for removal was causally linked to her decision, that is, to her view of the case." *Id.*

In contrast to *Laffitte*, the Court removed Juror No. 3 based in part on his conflicting testimony regarding whether or not he was willing to reexamine his own views and change his opinion if convinced it was erroneous and whether or not he could reach a decision for himself only after an impartial consideration of the evidence in the case with his fellow jurors. This testimony came after Jury Note A confirmed that a juror had stated *within minutes* of first retiring to the jury room for deliberation that he "will not change [his] mind" and Jury Note B confirmed mere minutes after being reinstructed on the duty to deliberate that the juror remained "unwilling to consider changing their opinion." (ECF No. 22-1, at 1-2.) This shows no reasonable or substantial possibility that Juror No. 3's dismissal stemmed from his view of the evidence. Instead, the jury notes and Juror No. 3's testimony supports the Court's finding that Juror No. 3 failed to follow its instructions regarding deliberations—specifically, Juror No. 3 stated at the outset of deliberations that he would not change his mind and that decision to disregard the Court's instructions on proper deliberation continued through Juror No. 3's removal.

Second, the juror in *Laffitte* stated that she did *not* wish to be replaced. 121 F.4th at 489. Here, on the other hand, in the middle of the Court making preliminary findings regarding Juror No. 3's polling answers and hearing from the parties regarding their positions on the same, Juror No. 3 *removed himself* from the jury room, stating he did not feel comfortable returning to the jury room.

Rather than entering the jury room with a willingness to conduct an impartial review of the evidence and hear the views of his fellow jurors, Juror No. 3 entered the jury room with an established opinion and stated that he would not change his mind. Further instructions on the duty

to deliberate and adjourning for the evening did not alter Juror No. 3's willingness to engage in deliberations. Then, after receiving an *Allen* charge and polling questions further discussing the duty to deliberate, Juror No. 3 removed himself from deliberations. Specifically, Juror No. 3 refused to remain in the jury room for deliberations and instead chose to stand in the vestibule between the jury room and the courtroom until the Court made a room available separate from the jury. (ECF No. 29, at 41:13-43:2.) The Court finds no reasonable or substantial possibility that Juror No. 3's decision to remove himself from the jury room was based on his views of the sufficiency of the evidence and instead was further evidence of his failure to follow the Court's instructions and engage in any sort of deliberations as required by his oath.

Third, unlike in *Laffitte,* where deliberations lasted "nearly eight hours" before the juror at issue asked about the possibility of being replaced by an alternate, the first indication of Juror No. 3's unwillingness to comply with his oath came mere minutes after the jury retired to begin deliberations. 121 F.4th at 490. The brevity of the time spent by the jury in potential deliberations, while not considered in isolation, serves as a strong indicator that Juror No. 3 refused to deliberate.

Fourth, in *Laffitte*, the Fourth Circuit emphasized that after the juror stated "that her request for removal was causally linked to her decision, that is, to her view of the case," the district court "had a variety of choices to adequately protect [the defendant]'s Sixth Amendment right to an impartial jury: send the juror back to deliberations with instructions that the jury continue to attempt to reach agreement, recess for the evening, or declare a mistrial. The district court [in *Laffitte*] did none of them." *Id.*

Here, on the other hand, the Court *did* reinstruct the jury as to their duty to deliberate multiple times, and it *did* recess for the evening to ensure that the jury would take all the time it needed to discuss the evidence and each juror's views of the same. Despite those efforts,

deliberations either never began or continued to stall because of Juror No. 3's unwillingness to follow the Court's instructions. Based on jury notes indicating one juror's refusal to deliberate, polling which identified Juror No. 3 as the culprit based on his demeanor and conflicting testimony, and then Juror No. 3's unilateral removal of himself from the jury, the Court removed Juror No. 3 for cause. Based on the totality of the circumstances in the record, such removal was proper because there is no reasonable or substantial possibility that Juror No. 3's removal was based on his view of the sufficiency of the Government's evidence.

Finally, unlike the facts in *Laffitte*, this case does not present a "close call" regarding whether a juror was removed based on his "holdout" status versus his refusal to comply with Court instructions. 121 F.4th at 490. The issues with Juror No. 3 came to the Court's attention mere minutes after the jury first retired to deliberate and before the evidence or instructions had been sent to the jury room. That was not sufficient time for any juror to be established as a "holdout," and thus, there is no reasonable or substantial possibility that Juror No. 3's removal stemmed from evidentiary-based concerns or his view of the sufficiency of the Government's evidence.

2. The facts of this case instead more closely resemble those in *United States v. Baker*, 262 F.3d 124 (2d Cir. 2001).

The facts of this case more closely resemble those in *Baker*, 262 F.3d 124. In *Baker*, less than two hours after jury deliberations commenced, the court received a note from the foreperson stating that one juror "says that the evidence is not going to change her mind. She has a feeling and that's it. She refuses to deliberate on any of the counts. She won't even look at the evidence." *Id.* at 128. The court decided to recess for the evening and resume deliberations in the morning. *Id.* Before dismissing the jury, the court received a second note which read, in part, that the one juror was "saying that no evidence will change her mind. She also said she feels we are against her. Now she refuses to even answer us." *Id.* In a third note, the foreperson requested an alternate

because of the juror's continued failure to discuss "anything" with the rest of the jury or "look at any of the evidence." *Id.*

In response to individual questioning from the court, the juror gave conflicting testimony. *Id.* at 129. At first, she stated that she considered the evidence, listened to the views of her fellow jurors, and came to a conclusion "based on the evidence"—a decision she reached after deliberations had begun. *Id.* In direct contrast, the juror later stated that she decided during closing arguments that she would not consider the evidence, that she stopped participating in deliberations and would refuse to participate in further deliberations, and that there was no possibility of changing her mind. *Id.* The court excused her as a juror after finding that she had made up her mind before deliberations, refused to consider the evidence and views of others during deliberations, and stated she would continue to refuse to participate in future deliberations. *Id.*

On appeal, the Second Circuit found that the trial court "acted within its discretion . . . in excusing her on the grounds that she improperly made up her mind prior to the beginning of deliberations and refused to engage in deliberations with the other jurors . . . ." *Id.* at 130. The Second Circuit further concluded that "the juror was not removed for her nonconforming view of the evidence." *Id.* at 131. Instead, "[s]he was removed for her admitted refusal to perform her duty as a juror by deliberating together with the other jurors." *Id.* at 131-32.[6]

Similar to the facts presented in *Baker*, this Court excused Juror No. 3 because of his failure to deliberate and follow the Court's instructions. Juror No. 3 himself stated that he could not reach

---

[6] The Second Circuit not only found that the juror was *not* removed based on her views of the evidence but also suggested that the "any possibility" standard does not apply where a juror refuses to participate in deliberations in violation of a juror's duties. *Baker*, 262 F.3d at 132 ("Because the district court's reason for dismissing the juror was that the juror refused to participate in deliberations as required by her obligations as a juror, the ['any possibility'] rule of *Thomas* does not apply, and the trial court was within its discretion in removing the juror.").

a decision after an impartial consideration of the evidence with his fellow jurors.  (ECF No. 29, at 36:3-6.)  In addition, the notes from the other jurors strongly supported these statements as they indicated one juror would not change their mind and no amount of deliberations would convince them otherwise mere minutes after beginning deliberations.  (ECF No. 22-1, at 1-2.)  Like in *Baker*, Juror No. 3's "own statements as well as the basis of the notes sent by the jury foreperson," the short duration of "deliberations," and Juror No. 3's refusal to return to the jury room to participate in further deliberations all support his removal.  *Id.* at 131.

## IV.    CONCLUSION

For these reasons, the Court will DENY Defendant's Motion for New Trial.  (ECF No. 33.)

Let the Clerk file a copy of this Order electronically and notify all counsel of record.

It is so ORDERED.

_____  /s/
                               Summer L. Speight
                               United States Magistrate Judge

Richmond, Virginia
Date: June 11, 2025