**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:25-cr-104-MHL** |
| | ) | |
| **GEORGE G. CASANOVA,** | ) | |
| | ) | |
| *Defendant.* | ) | |

**OPENING BRIEF FOR MR. CASANOVA'S APPEAL TO THE DISTRICT JUDGE**

**I.      Introduction**

This appeal arises from the prosecution of George Casanova for driving under the influence, reckless driving, and unlawful entry of a military installation on Fort Gregg-Adams, a United States Army facility near Petersburg, Virginia. After a jury trial before a United States magistrate judge, the magistrate judge struck a deliberating juror who expressed disagreement with the other jurors about the driving under the influence count. An alternate juror was called in and the reconstituted jury soon returned guilty verdicts on all charges. The magistrate judge granted Mr. Casanova's post-trial motion to dismiss the reckless driving charge, without government objection. However, the magistrate judge denied Mr. Casanova's post-trial motion for a new trial based on the juror's removal and entered final judgment on June 16, 2025, sentencing Mr. Casanova to 30 days of imprisonment for the driving under the influence charge, plus five days of imprisonment, to run concurrently, for the unlawful entry of a military installation charge, to be followed by twelve months of supervised release, with certain conditions. Mr. Casanova appealed to a district judge pursuant to Federal Rule of Criminal Procedure 58(g)(2).

1

## II.    Issue Presented

Whether the magistrate judge abused her discretion, or otherwise erred, by removing a deliberating juror after the juror stated that his view of the evidence differed from the rest of the panel but confirmed that he understood and could fulfill his duty to deliberate.

## III.    Procedural History

This case began with a two-count Criminal Information charging Mr. Casanova with driving under the influence of alcohol in the special territorial jurisdiction of the United States, in violation of 18 U.S.C. § 13, assimilating Virginia Code §§ 18.2-266 & 270(A) (Count One), and reckless driving in the special territorial jurisdiction of the United States, in violation of 18 U.S.C. § 13, assimilating Va. Code §§ 46.2-862 & 868 (Count Two). ECF No. 1 at 1–2. The government later filed a three-count Superseding Information, charging Mr. Casanova with the same violations in Count One and Count Two of the original Criminal Information, plus an additional count of going upon a military installation for a purpose prohibited by law or regulation within the jurisdiction of the United States, in violation of 18 U.S.C. § 1382 (Count Three). ECF No. 7 at 2. Although the charges carried the right to a jury trial before a United States district judge (*see* Fed. R. Crim. P. 58(b)(2)(E)), Mr. Casanova consented to being tried, judged, and sentenced before a United States magistrate judge. ECF No. 5.

The case proceeded to a jury trial that began on February 24, 2025. After presentation of the evidence and the Court's reading of the jury instructions, the jury began to deliberate shortly before 6:34 p.m. that same day. *See* Feb. 24, 2025 (Day 1) Trial Tr., ECF No. 32, at 253. Sometime between 6:34 p.m. and 7:03 p.m., the jury foreperson wrote a note to the Court, stating: "What do we do? One juror disagrees on Count One, states they will not change their mind." *Id.* The Court returned the jury to the courtroom and instructed the jury to continue

2

deliberating by re-reading part of the prior-issued jury instructions, without objection from either party. *See id.* at 254–56. The jury returned to deliberate further at 7:08 p.m. *Id.* at 256. The jury then returned a second note with a time stamp of 7:13 p.m., stating: "It has been stated that the juror is unwilling to consider changing their opinion. No amount of deliberation will convince them otherwise. The only reason juror would change is to cave to majority." *Id.* At 7:39 p.m., the Court reconvened and read the second note into the record. *Id.* The Court then asked if either party would object to the Court instructing the jury to return for further deliberations the next day, and neither party objected. *Id.* The Court so instructed the jury and recessed for the night at 7:45 p.m. *Id.* at 258.

The jury began deliberating the next morning, February 25, 2025, at approximately 9:20 a.m. *See* Feb. 25, 2025 (Day 2) Trial Tr., ECF No. 29, at 4. Several hours later,[1] the Court reconvened and read a third jury note into the record that had been submitted at about 9:50 a.m. *Id.* The third jury noted stated: "We cannot come to a unanimous agreement. I request an individual poll from the judge as to whether a single juror feels further deliberations will result in a different result." *Id.* At this point, the Court distributed a proposed *Allen* charge to which Mr. Casanova objected in part, and the Court sustained the objection, ultimately giving a modified *Allen* charge as requested by Mr. Casanova. *See id.* at 4–7. The Court also distributed proposed polling questions to the jury. *Id.* at 7–8. Neither party objected to the language of the polling instructions. *Id.* at 8.

The Court then proceeded to poll each of the jurors individually. The jurors were in near-

---

[1] The Day 2 transcript does not have timestamps for the exact times at which the Court convened and recessed on Day 2, so some of the time periods here are recollected to the best of counsel's ability.

unanimous agreement that they would not be able to come to a unanimous verdict as to all counts. *See id.* at 11–31. Juror 3—the juror who was ultimately removed—testified as follows:

THE COURT: Do you understand The Court's jury instructions?

[JUROR 3]: Yes.

THE COURT: Are you able to comply with those instructions?

[JUROR 3]: Yes.

THE COURT: In part, those instructions require jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so without violence to individual judgment. They also require each juror to decide the case for himself and herself but to do so only after an impartial consideration of the evidence in the case with your fellow jurors. Do you understand your duty to deliberate?

[JUROR 3]: Yes.

THE COURT: Are you able to deliberate with the other jurors?

[JUROR 3]: Yes.

THE COURT: Are you able and/or willing to re-examine your own views and to change your opinion if convinced it is erroneous without surrendering your honest conviction?

[JUROR 3]: No.

THE COURT: All right. In your opinion is the jury unable to agree on a verdict as to all counts?

[JUROR 3]: Yes.

Day 2 Trial Tr. at 25–26. The other jurors' responses were largely unremarkable except for those of Juror 25, who testified:

THE COURT: Are you able to deliberate with the other jurors?

[JUROR #25]: I don't think so.

*Id.* at 29.

After the Court had finished polling the jurors, the Court asked the parties how they would prefer to proceed given the polling results. *Id.* at 31. The government said that the parties agreed to request that the Court repoll Juror 3 to clarify his answers, but that regardless of his answers, the parties were prepared to agree that the Court should declare a mistrial on Count One. *Id.* at 32. Mr. Casanova echoed the government's position. *Id.* at 33–34. The Court agreed to repoll Juror 3, so he was brought back before the Court, and this exchange ensued:

THE COURT: I asked you earlier if you are able to—if you understand your duty to deliberate? Do you understand your duty to deliberate?

[JUROR 3]: Yes.

THE COURT: And are you able to deliberate with the other jurors?

[JUROR 3]: To be honest, yes.

THE COURT: I sensed hesitation earlier, which concerned me, which is part of the purpose of asking these questions. So if can not answer yes or no to that question, then, please. [sic].

[JUROR 3]: We have—since deliberations I have an opinion that differs from the rest of the group and I don't feel that it is appropriate for me to change that opinion.

THE COURT: All right. Are you able and/or willing to re-examine your own views and to change your opinion if convinced it is erroneous?

[JUROR 3]: Could you repeat that?

THE COURT: Are you able and/or willing to re-examine your own views and to change your opinion if convinced it is erroneous?

[JUROR 3]: Yes, if I was convinced it was erroneous, yes.

THE COURT: All right. Are you able to reach a decision for yourself after an impartial consideration of the evidence in the case with your fellow jurors?

[JUROR 3]: No.

THE COURT: All right. Thank you, sir. I appreciate it. I will ask you not speak

with the other jurors about this point.

Day 2 Trial Tr. at 35–36.

The Court then asked the parties for their positions following the re-polling. *Id.* at 36. The parties agreed that the juror should not be struck for cause based on the results of his re-polling answers. *Id.* at 36–37. The Court then began to give a ruling indicating that the Court intended to strike Juror 3 for cause. *Id.* at 37–39. The Court indicated that the Court had called an alternative juror back to the courthouse who could replace Juror 3 on the jury. *Id.* at 39. The Court asked the parties their position on replacing Juror 3 with the alternate, and the parties again agreed that it would not be appropriate. *Id.*

Then, a Court Security Officer entered the courtroom and indicated that Juror 3 had stepped out of the jury room, saying that he did "not feel comfortable" reentering the jury room. *Id.* at 41. The Court called Juror 3 back into the courtroom and questioned him again:

> THE COURT: I understand that you were not in the jury room, so I wanted to ask you, are you comfortable returning to the jury room and deliberating with the other jurors?
>
> [JUROR 3]: I am not.
>
> THE COURT: All right. I issued a charge instructing the jury to resume deliberations and the individual polling interrupted that in the middle of completing that. So the jury was not deliberating. Now that polling is complete, are you comfortable returning to the jury room and deliberating?
>
> [JUROR 3]: Well, deliberation has been going off and on the whole time—well, after the interviews they wanted to go around and start deliberating again, and everybody doing that—
>
> THE COURT: After everyone was done interviewing?
>
> [JUROR 3]: Yes.
>
> THE COURT: And you had stepped out?

6

> [JUROR 3]: Yes. We were discussing it. But I didn't feel comfortable with getting—I don't feel comfortable in that light.
>
> THE COURT: Thank you, sir.

Day 2 Trial Tr. at 42. The Court then ordered the Court Security Officer to place Juror 3 in another courtroom's jury room pending the resolution of the issue. *Id.* at 42–43. The Court again asked for the parties' positions. *Id.* at 43. The government stated that at that point, it had no objection to the Court replacing Juror 3 with the alternate juror. *Id.* at 43. Mr. Casanova objected to Juror 3's removal, requested that the jury be directed to return a verdict as to the counts on which it was unanimous, and moved for a mistrial on Count One. *Id.* The Court overruled the objection and removed Juror 3 from the jury. *Id.* at 43–46. The Court also ordered that the alternate juror be brought in. *Id.* at 46.

After the alternate juror was brought back, the Court reinstructed the jury and ordered the jury to begin deliberations again. *Id.* at 46–75. Not long afterwards, the jury returned a verdict finding Mr. Casanova guilty of all three counts. *Id.* at 75–78.

Following trial, Mr. Casanova filed two post-trial motions. First, he moved to dismiss the reckless driving count because Virginia Code § 19.2-294.1, as assimilated in 18 U.S.C. § 13, requires that after a jury returns a guilty verdict for both driving under the influence and reckless driving, the defendant may only be adjudged guilty of one. ECF No. 34. The government did not object, ECF No. 36, and the Court granted the motion. ECF No. 36. Second, Mr. Casanova moved for a new trial, arguing that the Court had erred in dismissing Juror 3. ECF No. 33. The government opposed this motion, ECF No. 35, and the Court denied it. ECF No. 44.

At the sentencing hearing on June 10, 2025, the Court sentenced Mr. Casanova to 30 days of imprisonment for the driving under the influence count, plus five concurrent days of

7

imprisonment for the unlawful entry of a military installation count, to be followed by twelve months of supervised release, with certain conditions. ECF No. 49.

After the entry of the final judgment, Mr. Casanova timely filed a notice of appeal to a district judge pursuant to Federal Rule of Criminal Procedure 58(g)(2). ECF No. 51.

## IV.    Law & Argument

The Sixth Amendment guarantees the right to an impartial jury. U.S. Const. amend. VI. That guarantee "includes a requirement that the verdict should be unanimous." *Ramos v. Louisiana*, 590 U.S. 83, 92 (2020) (quoting *Patton v. United States*, 281 U.S. 276, 288 (1930)) (internal quotation marks removed). The unanimity requirement stretches as far back as 14th century England. *Id.* at 90. As one 1326 case put it, "a verdict, taken from eleven, was no verdict" at all. *Id.* (quoting J. Thayer, Evidence at the Common Law 86–90 (1898)).

Inseparable from the right to a unanimous jury is the guarantee that each juror must be free to weigh the evidence and maintain an honest conviction without fear of removal for holding a minority view. Accordingly, in the Fourth Circuit, it is error for a court to remove a juror where there is a "reasonable" or "substantial" possibility that the removal was based on the juror's views of the case. *United States v. Laffitte*, 121 F.4th 472, 488–89 (4th Cir. 2024) (noting that other circuits have used both formulations but declining to choose between them because either standard was met). This rule protects the independence of each juror's conscience and the defendant's right to have his fate decided by the twelve originally empaneled jurors.

Although a court retains discretion to remove a juror who becomes physically or emotionally incapable of continuing, "the removal of a juror whose emotions render [them] incapacitated may be an adequate exercise of the district court's discretion" only when that incapacity bears "no causal link to the juror's holdout status." *Laffitte*, 121 F.4th at 490 (quoting

8

*United States v. McGill*, 815 F.3d 846, 869 (D.C. Cir. 2016)). The trial court must therefore distinguish between genuine incapacity—such as illness or an unrelated emergency—and the predictable stress or anxiety that arises when a lone juror holds an unpopular view. Where the record suggests the latter, the Sixth Amendment forbids removal.

Here, there is a reasonable or substantial possibility that Juror 3's removal was based on his views of the case. The decisive evidence is Juror 3's unambiguous statement about why he could not agree with the other 11 jurors to convict Mr. Casanova of Count One: "We have— since deliberations I have an opinion that differs from the rest of the group and I don't feel that it is appropriate for me to change that opinion." Day 2 Trial Tr. at 35. Put simply, Juror 3 had a different view of the evidence on Count One than the other jurors. The record does not support an inference that he refused to deliberate with the other jurors. To the contrary, the jury's first note referred to disagreement on Count One only, meaning that Juror 3 agreed with the other jurors about Counts Two and Three. *See* Day 1 Trial Tr. at 253. The fact that Juror 3 agreed with the other jurors on Counts Two and Three establishes that he engaged in good-faith deliberations with the other jurors but respectfully disagreed with them on the one count. In other words, Juror 3 fulfilled his oath to deliberate with the other jurors. He just had a different "view[] of the case"—or at least Count One. *See Laffitte*, 121 F.4th at 488.

The fact that Juror 3 said that he was not comfortable reentering the jury deliberation room makes no difference to the analysis. In *Laffitte*, the removed juror expressed a similar sentiment, telling the court she could no longer perform her duties, and asking to be replaced. 121 F.4th at 480. The Fourth Circuit nevertheless held that that it was error to remove her, holding that her anxiety likely arose from her disagreement with other jurors rather than from any independent incapacity. *Id.* at 490–91. The same causal link exists here. To the extent Juror 3

9

requested removal, that request flowed from the pressure of being outnumbered—not from a condition that prevented him from deliberating.

The Sixth Amendment does not permit removal merely because deliberations are tense or a juror feels isolated. Those are natural features of a system that requires unanimity. Because the record shows that Juror 3 was removed for reasons tied to his view of the evidence, the magistrate judge's decision violated Mr. Casanova's Sixth Amendment rights and constitutes error.

This error constitutes structural error because it implicates Mr. Casanova's substantial rights, and therefore it is not subject to harmless error review. *See* Fed. R. Crim. P. 52(a). Even if the Court determines that harmless error review applies, however, the error clearly is not harmless, because Mr. Casanova would not have been convicted of Count One but for the magistrate judge's removal of Juror 3. *See Laffitte*, 121 F.4th at 491–92 (declining to reach issue of whether error was subject to harmless review because reversal was warranted regardless).

The appropriate remedy is remand for a new trial. *Laffitte*, 121 F.4th at 494. Mr. Casanova only asks for a new trial on Count One but has no objection to the Court ordering a new trial on Count Three as well, if the Court determines it appropriate to do so.

V.      **Conclusion**

Mr. Casanova recognizes that the magistrate judge faced a difficult situation after the jury announced that it was deadlocked on Count One. But the Sixth Amendment does not permit a court to resolve such an impasse by altering the composition of the jury. Once Juror 3 was removed and replaced with an alternate, the verdict that followed was no longer the unanimous product of the lawfully empaneled jury. Therefore, it violated his Sixth Amendment rights. The appropriate remedy is a new trial on Count One.

Respectfully Submitted,
GEORGE G. CASANOVA

By:              /s/

Mark D. Duda
Virginia Bar No. 97784
Attorney for George G. Casanova
Assistant Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0835
Fax (804) 648-5033
mark_duda@fd.org

11