**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**UNITED STATES OF AMERICA,**

    **v.**                               **Criminal No. 3:25cr104**

**GEORGE G. CASANOVA,**

    **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant George G. Casanova's appeal from his conviction on a three-count Superseding Criminal Information before a United States Magistrate Judge. On February 25, 2025, a jury found Mr. Casanova guilty on all three counts of the Superseding Criminal Information. (ECF No. 24.) On June 10, 2025, United States Magistrate Judge Summer L. Speight sentenced Mr. Casanova. (ECF Nos. 43, 49.) Mr. Casanova now appeals the final judgment entered by the Magistrate Judge pursuant to Federal Rule of Criminal Procedure 58(g)(2),[1] arguing that the Magistrate Judge improperly struck a juror for cause during deliberations. (ECF No. 57, at 1.)

---

[1] Federal Rule of Criminal Procedure 58 provides, in relevant part:

(g) Appeal.

\* \* \*

    (2) From a Magistrate Judge's Order or Judgment.

    \* \* \*

        (B) Appeal from a Conviction or Sentence. A defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry. To appeal, the defendant must file a notice with the clerk specifying the judgment being appealed and must serve a copy on an attorney for the government.

Fed. R. Crim. P. 58(g)(2)(B).

On November 3, 2025, Mr. Casanova filed an appeal brief. (ECF No. 57.) The United States filed a brief in opposition, (ECF No. 58), and Mr. Casanova replied, (ECF No. 59). This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process. For the reasons articulated below, the Court will affirm Mr. Casanova's conviction and dismiss his appeal.

## I. Factual and Procedural Background

### A.    Factual Background[2]

On December 19, 2024, the United States filed a three-count Superseding Criminal Information charging Mr. Casanova with (1) operating a motor vehicle under the influence of alcohol, in violation of 18 U.S.C. § 13, assimilating Va. Code §§ 18.2-266 & 270(A) ("Count One"); (2) reckless driving, in violation of 18 U.S.C. § 13, assimilating Va. Code §§ 46.2-852 & 868 ("Count Two"); and, (3) unlawful entry upon a military installation, in violation of 18 U.S.C. § 1382 ("Count Three"). (ECF No. 7.) Mr. Casanova consented to trial before a United States Magistrate Judge, (ECF No. 5), and trial began on February 24, 2025, (ECF No. 22).

### 1.    On the First Day of Trial, the Magistrate Judge Receives Two Notes from the Jury Regarding its Inability to Reach a Verdict

At the end of the first day of trial, the Magistrate Judge instructed the jury as follows:

> Your verdict must represent the collective judgment of the jury. In order to return a verdict, it is necessary that each juror agree to it. It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each

---

[2] Federal Rule of Criminal Procedure 58(g)(2)(C) provides that the record used by the court on appeal "consists of the original papers and exhibits in the case; any transcript, tape, or other recording of the proceedings; and a certified copy of the docket entries." Fed. R. Crim. P. 58(g)(2)(C). Because Mr. Casanova confines his argument on appeal to the Magistrate Judge's dismissal of a juror for cause, the Court likewise focuses its review of the record on the trial transcripts capturing that dismissal. (ECF Nos. 29, 32.)

2

of you must decide the case for himself and herself, but do so *only after an impartial consideration of the evidence in the case with your fellow jurors.* In the course of your deliberations, do not hesitate to reexamine your own views and to change your opinion if convinced it is erroneous. Do not surrender your honest conviction, however, solely because of the opinion of your fellow jurors or for the mere purpose of thereby being able to return a unanimous verdict.

(ECF No. 32, at 247:18–248:8 (emphasis added).) The Magistrate Judge then excused the jurors to deliberate, and deliberations began at 6:34 p.m. (ECF No. 32, at 251:3–4, 253:14.) "[W]ithin minutes[3] after the jury retired to start initial deliberation," the foreperson submitted a note to the Magistrate Judge reading, "What do we do – One juror disagrees on Count One. States they will not change their mind."[4] (ECF No. 29, at 43:23–25; ECF No. 22-1, at 2.) The Magistrate Judge received this note *"before the exhibits had been sent to the jury and before the final jury instructions had been sent to the jury room,"* which the Magistrate Judge had ordered to be delivered. (ECF No. 29, at 43:25–44:2 (emphasis added).)

The Magistrate Judge discussed the note with the parties outside the presence of the jury, emphasizing that the note "came in . . . early in the deliberation process." (ECF No. 32, at 253:21–22.) Without objection from the parties, the Magistrate Judge brought the jury back into the courtroom and repeated her instruction above regarding the jurors' duty to deliberate. (ECF

---

[3] The record does not reflect the exact time the jury submitted its first note to the Magistrate Judge. The first note contains only the date on which the foreperson submitted it, February 24, 2025, but not the time of submission. (*See* ECF No. 22-1, at 2.) And in her opinion denying Mr. Casanova's motion for a new trial, the Magistrate Judge described the first note as arriving *"[j]ust a few (no more than five) minutes later [after the beginning of deliberations], and before the jury instructions and exhibits were even delivered to the jury room."* (ECF No. 44, at 3 (emphasis added).)

[4] While the jurors' notes did not mention Juror Three by name or juror number, the record clearly establishes that the notes referred to Juror Three. Mr. Casanova does not argue otherwise.

No. 32, at 254:2–256:1.)  The Magistrate Judge excused the jury to resume its deliberations at approximately 7:08 p.m.  (ECF No. 32, at 256:4.)

At 7:13 p.m., again just minutes after being reinstructed and retiring to deliberate, the foreperson submitted a second note to the Magistrate Judge reading, "It has been stated that the juror is unwilling to consider changing their opinion.  No amount of deliberation will convince them otherwise.  The only reasons juror would change is to cave to majority."  (ECF No. 32, at 256:5–13; ECF No. 22-1, at 1.)  Without objection from the parties, the Magistrate Judge returned the jury to the courtroom and reminded the jurors that the Magistrate Judge had "already provided instructions surrounding the duty to deliberate and . . . provid[ed] guidance on how to undertake that obligation."  (ECF No. 32, at 256:14–257:7.)  The Magistrate Judge adjourned for the evening and informed the jurors that they would resume deliberations the following morning.  (ECF No. 32, at 257:8–258:11.)

### 2.    On the Second Day of Trial, the Magistrate Judge Receives Two More Notes from the Jury Regarding its Inability to Reach a Verdict

On February 25, 2025, the second day of trial, the jury resumed deliberations at 9:20 a.m. (ECF No. 29, at 4:2–4.)  At 9:50 a.m., the jury submitted a third note to the Magistrate Judge reading, "We cannot come to a unanimous agreement.  I request an individual poll from the judge as to whether a single juror feels further deliberations will result in a different result." (ECF No. 29, at 4:8–12; ECF No. 23-2, at 1.)  The Magistrate Judge discussed the note with the parties outside of the presence of the jury and explained her belief that, given the short time frame between the jury's resumption of deliberations and its submission of the third note, "[t]he timing reflect[ed] that deliberations are not occurring."  (ECF No. 29, at 4:18–19.)

With the consent of the parties, the Magistrate Judge then brought the jurors into the courtroom and delivered an *Allen* charge.  (ECF No. 29, at 7:16–10:20.)  After completing this

instruction, and again with the consent of the parties, the Magistrate Judge allowed the jurors to retire to the jury room, told them not to deliberate until individual polling was completed, and conducted polling (with questions approved by counsel) of each juror one-by-one in the courtroom with counsel present. (ECF No. 29, at 10:23–11:1.) During the Magistrate Judge's poll of Juror Three, the following colloquy occurred:

> [THE COURT:] I will also remind you that you took an oath yesterday to answer the questions truthfully, and you remain under oath. Do you understand that?
>
> A JUROR: Yes.
>
> THE COURT: Do you understand the Court's jury instructions?
>
> A JUROR: Yes.
>
> THE COURT: Are you able to comply with those instructions?
>
> A JUROR: Yes.
>
> THE COURT: In part, those instructions require jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so without violence to individual judgment. They also require each juror to decide the case for himself and herself but to do so only after an impartial consideration of the evidence in the case with your fellow jurors. Do you understand your duty to deliberate?
>
> A JUROR: Yes.
>
> THE COURT: Are you able to deliberate with the other jurors?
>
> A JUROR: Yes.
>
> THE COURT: Are you able and/or willing to re-examine your own views and to change your opinion if convinced it is erroneous without surrendering your honest conviction?
>
> A JUROR: No.

THE COURT: All right. In your opinion is the jury unable to agree on a verdict as to all counts?

A JUROR: Yes.

(ECF No. 29, at 24:23–26:4.)

"Shortly before the last juror was called in for individual polling," the Magistrate Judge received a fourth note from the jury reading, "Procedural question. We have a unanimous verdict on two of the three counts. Does a non-unanimous vote on one count void the verdict on the other two counts?" (ECF No. 29, at 31:3–7; ECF No. 23-2, at 2.) The Magistrate Judge again expressed "concern[] that the record [the court had showed] within minutes after retiring a juror ma[de] up their mind and . . . refus[ed] to re-examine." (ECF No. 29, at 31:14–16.)

The Magistrate Judge asked the parties to consider whether, after the individual polling, "there [was] a juror who [was] not willing, and [was] not complying with their obligations to deliberate and make up their mind after deliberating." (ECF No. 29, at 31:11–13.) The parties agreed that Juror Three's responses to the Magistrate Judge's individual polling were concerning and requested that the Magistrate Judge poll Juror Three again individually or declare a mistrial as to Count One. (ECF No. 29, at 32:14–24.) The Magistrate Judge noted that she had a "juror who [after individual polling] ha[d] . . . indicated an unwillingness to re-examine their own opinion, even if convinced it is erroneous. And [the court had] an alternate juror on standby who [could] be brought in if [the court had] one juror who [was] not able to fulfill their oath." (ECF No. 29, at 33:1–5.) Defense counsel objected to calling an alternate juror in without additional questioning, and the parties again agreed that the Magistrate Judge should conduct renewed individual polling of Juror Three, which she did. (ECF No. 29, at 33:7–34:12.)

6

### 3. The Magistrate Judge Polls Juror Three Individually for a Second Time

The Magistrate Judge questioned Juror Three a second time, the first conducted on an individual basis, and the following colloquy took place:

> [THE COURT:]  I wanted to follow up on a few polling questions that I asked everyone just to make sure there was no confusion.  I will remind you that you took an oath to answer the Court[] truthfully and you remain under oath. Do you understand that, sir?
>
> A JUROR:  Yes.
>
> THE COURT:  All right. I asked you earlier if you are able to—if you understand your duty to deliberate?  Do you understand your duty to deliberate?
>
> A JUROR:  Yes.
>
> THE COURT:  And are you able to deliberate with the other jurors?
>
> A JUROR:  To be honest, yes.
>
> THE COURT:  *I sensed hesitation earlier*, which concerned me, which is part of the purpose of asking these questions.  So if can [sic] not answer yes or no to that question, then, please.
>
> A JUROR:  *We have—since deliberations I have an opinion that differs from the rest of the group and I don't feel that it is appropriate for me to change that opinion.*
>
> THE COURT:  All right.  Are you able and/or willing to re-examine your own views and to change your opinion if convinced it is erroneous?
>
> A JUROR:  Could you repeat that?
>
> THE COURT:  Are you able and/or willing to re-examine your own views and to change your opinion if convinced it is erroneous?
>
> A JUROR:  Yes, if I was convinced it was erroneous, yes.
>
> THE COURT:  All right.  Are you able to reach a decision for yourself after an impartial consideration of the evidence in the case with your fellow jurors?
>
> A JUROR:  No.

(ECF No. 29, at 34:21–36:6 (emphasis added).)

After this colloquy, the United States argued that "the juror was able to clarify that he [was] able and/or willing to re-evaluate his opinion if he was to, if he was convinced it was erroneous, so . . . that concern is addressed." (ECF No. 29, at 36:21–24.) Defense counsel "agree[d] with the government" because Juror Three's answers to the renewed polling "essentially rehabilitated his earlier answer." (ECF No. 29, at 37:4–6.)

The Magistrate Judge found otherwise, explaining that Juror Three's answers during the renewed polling remained problematic:

> The first question came in minutes after they retired. And it was indicating one juror would not change their mind, and had stated he would not change their mind. That is not deliberation. The jury was instructed again on the duty to deliberate. Retired at 7:09 p.m. 7:13 p.m., so four minutes later, a second note was submitted that said a juror is unwilling to consider changing their opinion, and that further deliberations would not be effective. A very similar note shortly after they resumed deliberations this morning.
>
> We have now conducted polling. I had one juror who indicated that they are able to deliberate with other jurors, but hesitated, and on re-polling has clarified that they are deliberating, but they are not—they are not actually deliberating.
>
> I have gotten conflicting answers about a willingness to re-examine their own opinion. I have gotten a, "no, I am not willing to re-examine my own opinion and to change my opinion even if it is erroneous." I have gotten after some hesitation a "yes." And then I have been told, but I am not—I am not making a decision after an impartial consideration of the evidence in the case with my fellow jurors.
>
> When I asked if the juror would make a decision for himself or herself after an impartial consideration of the evidence in the case with the fellow jurors, the answer was "no." *It seems to me like I have a juror who, based on demeanor, based on the answers, conflicting answers, hesitation, followed by answers who is not willing to deliberate, and is not willing to consider other thoughts or re-examine his own opinion or even talk about his own opinion.* Deliberation is not three minutes in a jury room. Deliberation is not another four minutes in a jury room. That is not enough time to actually conduct deliberations.
>
> So I don't understand, I guess, the position that we have a juror who is able to undergo their oath, and commit their oath, and fulfill their oath. And not to change their mind just to reach a verdict, but to actually deliberate and make up their mind after considering the evidence and taking an impartial view and hearing of others' opinions. That is my concern that we have.

8

> So, I have an alternate juror. I have an alternate juror who is in the courthouse, sat through the entire trial, who heard all the instructions, and who is able to resume if I have one juror who is not able to fulfill their oath and keep an open mind.

(ECF No. 29, at 37:19–39:19 (emphasis added).)

Defense counsel conceded that "while [he] agree[d] with the record that a question came back almost immediately after the jury had returned to deliberate indicating that one juror was unwilling to change their mind," at that point the court and the parties "had no indication the jury had properly deliberated to reach that conclusion. [The court and the parties] ultimately just [did not] know exactly what ha[d] been happening in the jury room during the approximately probably about five hours, four hours, that the jury ha[d] been meeting otherwise." (ECF No. 29, at 40:6–15.) As a result, defense counsel argued that it was "appropriate to keep the jury pool as is." (ECF No. 29, at 40:19–20.) The United States agreed with defense counsel, but nevertheless noted that "if the ultimate decision [was] to strike that juror for cause and call back the alternate juror . . . the government [was] fully accepting of that decision." (ECF No. 29, at 41:7–11.)

### 4.    Juror Three Refuses to Re-enter the Jury Room

Before the Magistrate Judge decided whether to dismiss Juror Three for cause, a United States Marshal notified the Magistrate Judge that Juror Three was "[i]n the vestibule. He said he [did] not feel comfortable going back to the jury room." (ECF No. 29, at 41:13–15.) The Magistrate Judge returned Juror Three to the courtroom for a third time and the following colloquy ensued:

> [THE COURT:] I will remind you again you are under oath to answer the questions truthfully, and you remain under oath. Do you understand that, sir?
>
> A JUROR: Yes.

9

THE COURT: All right. I understand that you were not in the jury room, so I wanted to ask you, are you comfortable returning to the jury room and deliberating with the other jurors?

A JUROR: I am not.

THE COURT: All right. I issued a charge instructing the jury to resume deliberations and the individual polling interrupted that in the middle of completing that. So the jury was not deliberating. Now that polling is complete, are you comfortable returning to the jury room and deliberating?

A JUROR: Well, deliberation has been going off and on the whole time—well, after the interviews they wanted to go around and start deliberating again, and everybody doing that—

THE COURT: After everyone was done interviewing?

A JUROR: Yes.

THE COURT: And you had stepped out?

A JUROR: Yes. We were discussing it. But I didn't feel comfortable with getting—I don't feel comfortable in that light.

THE COURT: Thank you, sir.

(ECF No. 29, at 41:22–42:24.) Relying on this interaction, the United States "agree[d] with [t]he Court that it [was] appropriate to recall the alternate juror and replace juror number three." (ECF No. 29, at 43:9–12.) Defense counsel countered that "the correct course of action [was] to let [deliberation] play out and declare a mistrial and have the jury return a verdict as to counts two and three." (ECF No. 29, at 43:14–19.) Defense counsel objected to striking Juror Three for cause. (ECF No. 29, at 43:18–19.)

The Magistrate Judge ultimately overruled defense counsel's objection, struck Juror Three for cause, seated the alternate juror, and reinstructed the newly-formed jury. (ECF No. 29, at 43:21–75:20.) The jury began its deliberations and returned a guilty verdict on all three Counts. (ECF No. 29, at 76:19–77:1.)

10

### B.    Procedural Background

On March 11, 2025, Mr. Casanova filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33.  (ECF No. 33.)  On the same day, Mr. Casanova filed a motion to dismiss Count Two of the Superseding Criminal Information.  (ECF No. 34.)  The Magistrate Judge denied the motion for a new trial, (ECF Nos. 44, 45), and granted the motion to dismiss Count Two, (ECF No. 46).

On June 10, 2025, the Magistrate Judge sentenced Mr. Casanova.  (ECF Nos. 43, 49.)  Mr. Casanova timely filed a notice of appeal of the final judgment.  (ECF No. 51.)  Mr. Casanova filed a motion to stay the execution of his sentence pending appeal, (ECF No. 52), which the Court granted, (ECF No. 55).

## II.  Standard of Review

Pursuant to Federal Rule of Criminal Procedure 58(g)(2)(B), a defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within fourteen days of its entry.  Fed. R. Crim P. 58(g)(2)(B).[5]  "An appellate review conducted by a district court after a bench [or jury] trial before a magistrate judge is not a trial *de novo*; rather, the district court utilizes the same standards of review applied by a court of appeals in assessing a district court conviction." *United States v. Bursey*, 416 F.3d 301, 305 (4th Cir. 2005) (citing Fed. R. Crim. P. 58(g)(2)(D)).  The district court reviews the magistrate judge's findings of fact for clear error, and reviews the legal determinations, such as interpretations of statutes and regulations, *de novo. Id.* (citing *United States v. Leftenant*, 341 F. 3d 338, 342–43 (4th Cir. 2003)).

---

[5] 18 U.S.C. § 3402 likewise provides that, "[i]n all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed."

### III. Analysis

Mr. Casanova argues that the Magistrate Judge improperly dismissed Juror Three. (ECF No. 57, at 9.) According to Mr. Casanova, "there is a reasonable or substantial possibility that Juror 3's removal was based on his views of the case," thereby violating his Sixth Amendment right to an impartial jury. (ECF No. 57, at 9.) After Juror Three explained that "since deliberations [he had] an opinion that differ[ed] from the rest of the group," the Magistrate Judge could not lawfully remove Juror Three owing to that difference of opinion. (ECF No. 57, at 9.) The United States responds that the Magistrate Judge properly removed Juror Three "because of his refusal to deliberate with his fellow jurors, not because of his views of the evidence." (ECF No. 58, at 9.) According to the United States, the brevity of Juror Three's deliberations, coupled with his noncommittal responses to the Magistrate Judge's individualized polling, demonstrated that he refused to engage in deliberations as required by the Magistrate Judge's jury instructions. (ECF No. 58, at 16.)

For the reasons articulated below, the Court is firmly convinced that the Magistrate Judge did not abuse her discretion in dismissing Juror Three. The Magistrate Judge developed a record during polling demonstrating that Juror Three neither grappled with the sufficiency of the evidence nor engaged in meaningful deliberation in violation of the Magistrate Judge's instructions. Indeed, the jury indicated in a note just minutes after retiring—*and before the evidence and jury instructions were brought into the jury room*—asking what to do as to Count One because "[o]ne juror disagrees on Count One. States they will not change their mind." (ECF No. 29, at 43:23–25; ECF No. 22-1, at 2.) It is hard to imagine that the Juror Three could have based his decision on the sufficiency of the evidence when the evidence was not in the jury room before the first note was sent to the Magistrate Judge and he had already "[s]tate[d] that [he] will

not change [his] mind." (ECF No. 29, at 43:23–25; ECF No. 22-1, at 2.)  And once Juror Three refused to re-enter the deliberation room, the Magistrate Judge had no choice but to empanel an alternate to begin deliberations anew.  Finally, even when Juror Three expressed his view that his opinion "differed" from that of other jurors, he undercut that assertion when he also disclaimed his willingness to engage in impartial consideration of the evidence.

As a result, the Court sees neither a reasonable nor a substantial possibility that the Magistrate Judge dismissed Juror Three on account of his views of the sufficiency of the evidence.  The Court concludes that Mr. Casanova's Sixth Amendment rights were not violated. Accordingly, the Court will affirm Mr. Casanova's conviction.

### A.      Legal Standard:  The Right to an Impartial Jury Under the Sixth Amendment

The Sixth Amendment to the United States Constitution guarantees the right to an impartial jury.[6]  This guarantee includes a requirement "that the verdict should be unanimous." *Ramos v. Louisiana*, 590 U.S. 83, 92 (2020) (quoting *Patton v. United States*, 281 U.S. 276, 288 (1930)).  A trial court may excuse a juror for "good cause" after the jury has retired to deliberate.

---

[6] The Sixth Amendment provides, in pertinent part:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed.

U.S. Const. amend. VI.

Fed. R. Crim. P. 23(b)(3).[7] And a trial court may "impanel . . . alternate jurors to replace any jurors who are unable to perform or who are disqualified from performing their duties." Fed. R. Crim. P. 24(c). But "[i]n light of the unanimous-jury requirement," a trial court may not dismiss a juror during deliberations "if the request for discharge stems from doubts the juror harbors about the sufficiency of the government's evidence." *United States v. Laffitte*, 121 F.4th 472, 488 (4th Cir. 2024) (quoting *United States v. Brown*, 823 F.2d 591, 596 (D.C. Cir. 1987)). "The reason for this prohibition is clear: 'To remove a juror because he [or she] is unpersuaded by the Government's case is to deny the defendant his [or her] right to a unanimous verdict.'" *United States v. Symington*, 195 F.3d 1080, 1085 (9th Cir. 1999).

In determining whether a trial court properly struck a juror, "[t]he relevant inquiry is . . . whether [the juror's] dismissal was based on [his or] her views of the case, and thus a violation of [the defendant's] Sixth Amendment right to an impartial jury, or instead, permissibly based on a separate ground bearing no causal link to [his or] her views of guilt or innocence." *Laffitte*, 121 F.4th at 488. If the trial court "forms an independent, good-cause justification for removing the juror that bears no 'causal link' to the juror's 'holdout status,'" the trial court may excuse the juror "even if the juror 'independently had doubts about the sufficiency of the evidence.'" *Id.*

---

[7] Federal Rule of Criminal Procedure 23(b)(3) provides:

> Court Order for a Jury of 11. After the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror.

Fed. R. Crim. P. 23(b).

14

(quoting *United States v. McGill*, 815 F.3d 846, 869 (D.C. Cir. 2016)). The Court "review[s] the dismissal of jurors for abuse of discretion." *Laffitte*, 121 F.4th at 488.

### 1.     Courts Have Split over the Proper Analysis of a Trial Judge's Dismissal of a Juror During Deliberations

Federal courts generally agree that the above good-cause standard governs whether a trial court properly dismissed a juror. *See Brown*, 823 F.2d at 596; *United States v. McGill*, 815 F.3d 846, 869 (D.C. Cir. 2016); *United States v. Thomas*, 116 F.3d 606, 620–25 (2d Cir. 1997); *United States v. Kemp*, 500 F.3d 257, 303–04 (3d Cir. 2007); *United States v. Ozomaro*, 44 F.4th 538, 544–46 (6th Cir. 2022); *Symington*, 195 F.3d at 1085–88; *United States v. Abbell*, 271 F.3d 1286, 1302–04 (11th Cir. 2001). But these courts have split over how best to determine whether a trial court dismissed a juror because of his or her "views of the case." *Laffitte*, 121 F.4th at 488.

### a.     The "Reasonable" Possibility Approach

The United States Courts of Appeals for the Third, Sixth, Ninth, and D.C. Circuits consider "whether there is a 'tangible' or 'appreciable' possibility [that the trial court dismissed the juror because of their views of the case], not merely whether there is literally any possibility, even just a theoretical one." *United States v. Wilkerson*, 966 F.3d 828, 838 (D.C. Cir. 2020); *see also Kemp*, 500 F.3d at 304; *Ozomaro*, 44 F.4th at 545–46; *Symington*, 195 F.3d at 1087. These courts characterize their inquiry as asking whether there is a "reasonable possibility" that the trial court dismissed the juror on account of their views of the evidence. *Laffitte*, 121 F.4th at 489.

As defined by the Ninth Circuit, the "reasonable possibility" standard states that "unless the available evidence is sufficient to leave one firmly convinced that the impetus for a juror's dismissal is unrelated to [his or] her position on the merits, the dismissal is improper." *Symington*, 195 F.3d at 1087 n.5.

### b.    The "Substantial" Possibility Approach

The Eleventh Circuit, in contrast, affirms a trial court's excusal of a juror "only when no '*substantial* possibility' exists that [the juror] is basing [his or] her decision on the sufficiency of the evidence." *Abbell*, 271 F.3d at 1303 (emphasis added). The "substantial probability" standard is "mean[t] . . . to be basically a 'beyond reasonable doubt' standard." *Id.* at 1302. The reviewing court must be convinced beyond a reasonable doubt that that the impetus for a juror's dismissal is unrelated to his or her position on the merits. *Id.*

### 2.    The United States Court of Appeals for the Fourth Circuit Declined to Adopt Either Approach So this Court Will Apply Both

The United States Court of Appeals for the Fourth Circuit adheres to the general standard that "[t]he relevant inquiry is . . . whether [the juror's] dismissal was based on [his or] her views of the case," but has declined to decide "whether a 'reasonable' or 'substantial' standard applies (assuming there is a difference between the two)."[8] *Laffitte*, 121 F.4th at 489. Rather, in its most recent decision addressing a trial court's dismissal of a juror, the Fourth Circuit determined that

---

[8] It is indeed unclear whether there is a difference between these standards. The Third Circuit has noted as much, describing the difference between a "reasonable possibility" and a "substantial possibility" as "one of clarification and not disagreement." *Kemp*, 500 F.3d at 304. The Fourth Circuit has likewise observed that any differences between the two standards are unclear. *Laffitte*, 121 F.4th at 489 (declining to choose between the two standards "assuming there is a difference between the two").

It is difficult to see where the play between the joints of the two standards would be. The Court struggles to envision a circumstance where a reviewing court be "firmly convinced" that the impetus for a juror's dismissal is unrelated to his or her position on the merits and affirm the dismissal under the "reasonable possibility" standard but still harbor some *reasonable* doubt regarding the impetus of the dismissal under the "substantial possibility" standard. *See Symington*, 195 F.3d at 1087 n.5; *Abbell*, 271 F.3d at 1302. The substantial possibility standard might add hair-splitting findings of fact versus conclusions of law which could obscure, rather than clarify, the task of a reviewing court. Abuse of discretion in the "reasonable" possibility analysis may prove unwieldy. But that is not decided today.

16

the trial court's removal of a juror "fail[ed] under either standard." *Id.* Accordingly, like the

Magistrate Judge,[9] this Court applies both standards to Mr. Casanova's Sixth Amendment claim.

The Court is guided by the analysis conducted by the Fourth Circuit in *Laffitte*. The

Fourth Circuit noted that trial courts deserve broad discretion to navigate whether dismissal of a

juror is appropriate. *Id.* at 489–90. The *Laffitte* court nevertheless engaged in a fact-intensive

inquiry, scrutinizing "the chronology of [the juror's] responses" to the trial court's questions and

the trial court's interactions with the jury generally. *Id.* at 489–91. The Court applies the same

analysis below to determine whether the Magistrate Judge properly dismissed Juror Three.

B. **The Record Supports the Conclusion that Juror Three Could Not Have Reached a Conclusion on the Sufficiency of the Evidence, Meaning There is Neither a Reasonable nor a Substantial Possibility that the Magistrate Judge Removed Juror Three Based on His Views of the Case**

The "chronology" of Juror Three's involvement in deliberation, *Laffitte*, 121 F.4th at 489,

demonstrates that the Magistrate Judge properly dismissed Juror Three for reasons other than his

views on the sufficiency of the evidence. The record demonstrates that Juror Three did not reach

a view on the sufficiency of the evidence because Juror Three (1) removed himself from

deliberations; (2) refused to deliberate with his fellow jurors before the evidence had even

reached the jury room; and, (3) gave at best equivocal responses when polled by the Magistrate

Judge regarding his willingness to engage in an impartial review of the evidence. Accordingly,

the Court sees neither a reasonable nor a substantial possibility that the Magistrate Judge

removed Juror Three based on his views of the case.

---

[9] In her opinion denying Mr. Casanova's motion for a new trial, the Magistrate Judge also applied both standards to conclude that her dismissal of Juror Three did not violate Mr. Casanova's Sixth Amendment rights. (ECF No. 44, at 14 n.2.)

### 1. Juror Three's Refusal to Reenter the Jury Room Eliminated Any Reasonable or Substantial Possibility that the Magistrate Judge Removed Juror Three Based on His Views of the Case

The Court begins with the end of the "chronology" of Juror Three's involvement in this matter. After one poll of the whole jury and two rounds of polling just of him, Juror Three absented himself from deliberations. As explained above, while the Magistrate Judge was asking the parties their positions on dismissal, but before the Magistrate Judge decided whether to dismiss Juror Three for cause, a United States Marshal notified the Magistrate Judge that Juror Three was "[i]n the vestibule. He said he [did] not feel comfortable going back to the jury room." (ECF No. 29, at 41:13–15.) The Magistrate Judge returned Juror Three to the courtroom for a third time, engaged him in another colloquy, and confirmed that he was not "comfortable returning to the jury room and deliberating with the other jurors." (ECF No. 29, at 41:22–42:24.) At that point, Juror Three's position was clear: he would neither engage with the evidence nor deliberate with his fellow jurors.

This fact clearly supported the Magistrate Judge's decision to remove Juror Three from the jury panel.[10] The Magistrate Judge rightly found this refusal to reenter the jury room

---

[10] The Fourth Circuit describes the proper inquiry into a trial court's dismissal of a juror as follows: a trial court may not dismiss a juror during deliberations "if the *request* for discharge stems from doubts the juror harbors about the sufficiency of the government's evidence." *Laffitte*, 121 F.4th at 488 (quotation omitted) (emphasis added). None of the jurors *requested* the dismissal of Juror Three. Only after polling Juror Three for a third time did the Magistrate Judge learn that Juror Three was unwilling to reenter the jury room. But the fact that no one made an express *request* for Juror Three's removal does not change the Court's analysis. To the contrary, Juror Three's refusal to reenter the jury room was tantamount to a *demand* that he be removed.

Moreover, Juror Three's refusal to reenter the jury room distinguishes this case from other circumstances in which courts have considered the Sixth Amendment right to an impartial juror. In the majority of reported cases concerning that right, a juror or a jury panel *requests* the removal of a juror under an expressed rationale. *See, e.g., Laffitte*, 121 F.4th at 479 (describing a juror's request to be replaced because she was "experiencing anxiety and unable to clearly make [her] decision"); *Symington*, 195 F.3d at 1083 (noting that "[t]he jurors suggested that the best

18

improper on the careful record she established. But even looking beyond Juror Three's refusal to reenter the jury room, ample facts on the record supported the Magistrate Judge's decision to remove Juror Three given his refusal to engage with the evidence or deliberate with his fellow jurors.

> **2.    That Juror Three Refused to Engage With the Evidence Before that Evidence or Jury Instructions Were Received in the Jury Room Undergirds the Magistrate Judge's Removal of Juror Three**

The "chronology" of Juror Three's removal preceding his refusal to reenter the jury room further bolsters the Court's conclusion that there was neither a reasonable nor a substantial possibility that the Magistrate Judge removed Juror Three for good cause and not based on his views of the case. "[W]ithin minutes after the jury retired to start initial deliberation," the foreperson submitted a note to the Magistrate Judge reading, "What do we do – One juror disagrees on Count One. States they will not change their mind." (ECF No. 29, at 43:23–25; ECF No. 22-1, at 2.) Importantly, the Magistrate Judge received this note *before the exhibits had been sent to the jury and before the final jury instructions had been sent to the jury room.* (ECF No. 29, at 43:22–44:2 (emphasis added).) This Court cannot find that Juror Three formed such an immutable position based on the sufficiency of the evidence when (1) the evidence *was not with the jury* and (2) Juror Three reached this conclusion "within minutes" of beginning deliberations.

---

solution would be for the judge to dismiss" another juror who they alleged failed to deliberate properly); *Ozomaro*, 44 F.4th at 546 (explaining that "two jurors . . . contacted court staff and expressed concerns of juror misconduct"). But Juror Three's response to the third poll was no less unequivocal: he made clear he would not continue to engage with the evidence or deliberate.

19

### 3. Juror Three's Equivocal Responses During Polling Further Demonstrates that the Magistrate Judge Did Not Remove Him Based on His Views of the Case

Mr. Casanova insists that Juror Three *had* reached a concrete opinion on the sufficiency of the evidence because, during the Magistrate Judge's second poll of Juror Three, he explained that he had "an opinion that differ[ed] from the rest of the group and [he did not] feel that it [was] appropriate for [him] to change that opinion." (ECF No. 57, at 9 (quoting ECF No. 29, at 35:13–16).) But Juror Three equivocated as to the true reasons behind his failure to come to an agreement with his fellow jurors. Indeed, during that same second poll, the Magistrate Judge asked Juror Three whether he was "able to reach a decision for [himself] after an *impartial consideration of the evidence* in the case," to which Juror Three clearly responded, "No." (ECF No. 29, at 34:21–36:6 (emphasis added).)[11]

The Court sees neither a reasonable nor a substantial possibility that Juror Three's responses during this colloquy demonstrated that the Magistrate Judge removed him based on his views of the case. Given Juror Three's express disclaimer of his willingness to engage in impartial consideration of the evidence *and* his refusal to do so before having received that evidence in the jury room, the Court cannot conclude that the Magistrate Judge abused her discretion in removing him from the jury.

Comparing Juror Three's responses to those at issue in the Fourth Circuit's *Laffitte* case supports this conclusion. In *Laffitte*, a juror requested her own dismissal after she "started to feel very anxious due to some of the reactions to [her] decision." 121 F.4th at 480. She noted that she "[didn't] want to be replaced, but . . . [she didn't] want to be trialed [sic] for [her] decision."

---

[11] To be sure, Juror Three also noted that he was willing to change his opinion if he was "convinced it was erroneous." (ECF No. 29, at 35:22–36:1.) But Juror Three ended this same colloquy by denying his willingness to engage in an impartial consideration of the evidence.

*Id.* When asked whether she was "able to perform [her] duties as a juror," she answered, "At this point, no." *Id.* The Fourth Circuit determined that the trial court's dismissal of the juror was linked to her views of the case: "Not only did [the juror] indicate that she did *not* want to be replaced, but she reiterated her immediately prior statement that her request for removal was causally linked to her decision, that is, to her view of the case." *Id.* at 489 (emphasis in original).

The juror in *Laffitte* never adopted positions nor made remarks akin to those made by Juror Three. She never explained to the trial judge that she was not "able and/or willing to re-examine [her] own views and to change [her] opinion" like Juror Three. (ECF No. 29, at 25:21–25:25.) She never indicated that she was not "able to reach a decision for [herself] after an impartial consideration of the evidence in the case with [her] fellow jurors" like Juror Three. (ECF No. 29, at 36:3–36:6.) And she never removed herself from the jury room, preventing further deliberations. (ECF No. 29, at 41:22–42:24.) To the contrary, the juror in *Laffitte* tied her desire to be dismissed only to her view of the evidence, and she did so only after "nearly eight hours of deliberations." *Laffitte*, 121 F.4th at 490. Where the juror in *Laffitte* made clear that her desire to be dismissed stemmed from her substantive disagreements with her fellow jurors, Juror Three's suggestion that he held "an opinion that differs from the rest of the group," (ECF No. 29, at 35:13–35:16), came only after he repeatedly refused to commit to impartial deliberations and considerations of the evidence. Indeed, Juror Three seemingly developed his opinion of the case "before the exhibits had been sent to the jury and before the final jury instructions had been sent to the jury room."[12] (ECF No. 29, at 43:24–44:2.)

--------------------------------------------

[12] Mr. Casanova argues, relying on *Laffitte*, that "[t]he fact that Juror 3 said that he was not comfortable reentering the jury deliberation room makes no difference to the analysis." (ECF No. 57, at 9.) Mr. Casanova continues: "[i]n *Laffitte*, the removed juror expressed a similar sentiment, telling the court she could no longer perform her duties, and asking to be

21

C.     **The Record Supports the Conclusion that Juror Three Failed to Engage in Proper Deliberations, Meaning There is Neither a Reasonable nor a Substantial Possibility that the Magistrate Judge Removed Juror Three Based on His Views of the Case**

Even were the Court to assume that Juror Three reached a view of the sufficiency of the evidence, the Magistrate Judge still properly removed him upon concluding that he refused to engage in deliberations. The record clearly demonstrates that Juror Three (1) refused to deliberate within minutes of reaching the jury room; (2) refused to abide by the Magistrate Judge's *repeated* instructions to deliberate; and, (3) again provided equivocal responses during polling regarding his willingness to deliberate. Because the Magistrate Judge properly removed Juror Three for his refusal to deliberate, the Court sees neither a reasonable nor a substantial possibility that the Magistrate Judge removed Juror Three based on his views of the case.

1.     **The Chronology of the Jury's Deliberations Demonstrates that Juror Three Refused to Deliberate Properly Immediately Upon the Start of Deliberations**

A review of the record demonstrates that Juror Three failed to abide by the Magistrate Judge's instructions and engage in deliberations immediately after receiving those instructions. "*[W]ithin minutes* after the jury retired to start initial deliberation," the foreperson submitted a note to the Magistrate Judge reading, "What do we do – One juror disagrees on Count One. States they will not change their mind." (ECF No. 29, at 43:23–25 (emphasis added); ECF No.

_____

replaced. The Fourth Circuit nevertheless held that that it was error to remove her." (ECF No. 57, at 9 (citing *Laffitte*, 121 F.4th at 480).) The Court does not agree.

The juror in *Laffitte* never expressly refused to return to the jury room. Rather, she explained that she could not "perform [her] duties as a juror" *because* she "started to feel very anxious due to some of the reactions to [her] decision." *Laffitte*, 121 F.4th at 480. And she never expressed any hesitation about her willingness to deliberate or consider the evidence impartially as Juror Three did here.

22-1, at 2.) The Magistrate Judge received this note "before the exhibits had been sent to the jury and before the final jury instructions had been sent to the jury room," (ECF No. 29, at 43:22–44:2), suggesting that no true deliberations took place before the jury issued its first note.

### 2. The Chronology of the Jury's Deliberations Demonstrates that Juror Three Refused to Abide by the Magistrate Judge's Instructions to Engage in Deliberations

The Magistrate Judge's conclusion that Juror Three failed to deliberate properly is undergirded by her repeated instructions to the jury to continue their deliberations. The Magistrate Judge instructed the jury *three times* to engage in fulsome deliberations: once during her final jury instructions, a second time upon receiving the jurors' first note, and a third time on the second day of deliberations when the Magistrate Judge delivered an *Allen* charge. Despite these instructions, the jury repeatedly informed the Magistrate Judge that deliberations were not taking place.

To be sure, Juror Three occasionally referenced deliberations in his response to polling questions. And even brief deliberations, standing alone, would not suggest that the jury did not engage in sufficient deliberations. "[T]he mere length of a jury's deliberation doesn't refute th[e] presumption" that juries "follow the judge's instructions, including the instruction to fully deliberate." *United States v. Burfoot*, 899 F.3d 326, 342 (4th Cir. 2018); *see also United States v. Mzese*, No. WMN–13–572, 2014 WL 2804001, at *3 n.4 (D. Md. June 19, 2014) (collecting cases to note that "[b]revity of deliberations alone does not . . . constitute grounds for a new trial").

But the record clearly belies Mr. Casanova's assertion that proper deliberations took place. Even presuming some deliberations occurred when the two notes were sent to the Court, the record does not end there. The Magistrate Judge instructed the jurors *again* regarding their

23

duty to deliberate, to no avail. Approximately five minutes after re-instructing the jury, the foreperson submitted a second note to the Magistrate Judge reading, "Juror is unwilling to consider changing their opinion. No amount of deliberation will convince them otherwise. The only reasons juror would change is to cave to majority." (ECF No. 32, at 256:6–13; ECF No. 22-1, at 1.) Juror Three demonstrated an unwillingness to deliberate *only minutes after having been reminded of his duty to deliberate*. The Magistrate Judge properly determined that true deliberation had not occurred.[13]

On the following day, the jury engaged in approximately thirty minutes of deliberation before submitting another note to the Magistrate Judge reading, "We cannot come to a unanimous agreement. I request an individual poll from the judge as to whether a single juror feels further deliberations will result in a different result." (ECF No. 29, at 4:8–12; ECF No. 23-2, at 1.) The quick rate at which the jury submitted these notes, interrupting deliberations soon after they began on both days, leaves no doubt that Juror Three was not engaged in meaningful deliberation as required by the Magistrate Judge's instructions.

### 3. Juror Three's Equivocal Responses During Polling Further Demonstrated that Proper Deliberation Did Not Take Place

Juror Three's equivocal responses to the Magistrate Judge's individualized polling supported her conclusion regarding the lack of deliberations. In an added effort to assure a proper finding, after providing the jurors with an *Allen* charge, the Magistrate Judge polled Juror

---

[13] Courts have found that while the Court reviews the Magistrate Judge's dismissal of Juror Three for an abuse of discretion, the Court reviews the Magistrate Judge's factual findings for clear error. *Bursey*, 416 F.3d at 306; *see also Abbell*, 271 F.3d at 1302–03 ("[W]hether a juror is purposely not following the law is a finding of fact that we will review for clear error."). The Magistrate Judge issued a finding on the record that, given the speed at which the jurors submitted their notes to the Magistrate Judge, no "true deliberation" occurred. (ECF No. 29, at 44:16–22.) To the extent that the Magistrate Judge's finding was a finding of fact, the Court reviews it for clear error and finds none.

Three individually on two separate occasions and received conflicting answers. As discussed above, when asked whether Juror Three was "able to deliberate with other jurors," he answered, "Yes." Yet when asked whether Juror Three was "able and/or willing to re-examine [his] own views and to change [his] opinion," he answered, "No." (ECF No. 29, at 24:23–25:25.) When asked during the Magistrate Judge's second polling whether he was "able to deliberate with the other jurors," Juror Three again answered, "To be honest, yes." And he agreed that he was "willing to re-examine [his] own views and to change [his] opinion if convinced it [was] erroneous." But when asked whether he was "able to reach a decision for [himself] after an impartial consideration of the evidence in the case with [his] fellow jurors," he answered, "No."[14] (ECF No. 29, at 34:21–36:6.) The Magistrate Judge marked Juror Three's hesitation in answering these questions.[15] (ECF No. 29, at 37:19–39:21.) Moreover, and despite any

---

[14] These equivocal answers distinguish Mr. Casanova's case from that of *United States v. Symington*, in which the Ninth Circuit reversed a defendant's conviction after concluding a juror had been removed as a result of her views on the case. 195 F.3d 1080, 1088 (9th Cir. 1999). Unlike Juror Three here, the juror in *Symington* was *unequivocal* that she was willing to continue deliberating *and* that she held different substantive views on the case than her fellow jurors. Even though some jurors described the removed juror as being unwilling to deliberate, the Ninth Circuit characterized even that source of disagreement as stemming from the jurors' substantive views of the evidence: "it appear[ed] that it was only because of their disagreement with [the removed juror] on the merits that the other jurors had occasion to question her ability to deliberate." *Id.* at 1088 n.8. The same is not true here. At every step of the deliberations, any disagreements between Juror Three and his fellow jurors stemmed from his unwillingness to deliberate. And unlike the present case, the jurors in *Symington* deliberated "for hours." *Id.* at 1096 (Fitzgerald, J., concurring).

[15] Mr. Casanova argues that despite Juror Three's answer that he was unable to reach a decision after an impartial consideration of the evidence with the other jurors, that answer "is directly undercut by Juror 3's previous response, where he explicitly affirmed that he was willing to re-examine his own views and to change his opinion if convinced that it was erroneous." (ECF No. 59, at 2.) Mr. Casanova continues by saying, Juror Three's response "much more likely indicates that he meant that he was not able to reach an agreement with the other jurors— not that he refused to impartially consider the evidence." (ECF No. 59, at 2.)

25

purported willingness to continue deliberations, Juror Three removed himself from the jury room, noting that he did not "feel comfortable in that light" after deliberations resumed.[16] (ECF No. 29, at 41:22–42:24.)

---

The Court cannot so find for two reasons. First, the Court cannot ignore the plain language of Juror Three's response that he was not "able to reach a decision for [himself] after an impartial consideration of the evidence in the case with [his] fellow jurors." (ECF No. 29, at 36:3–36:6.) If it were Juror Three's intention to suggest he maintained a substantive disagreement with his fellow jurors as to his interpretation of the evidence, he did not say so in any response to the court's questions. Second, the Magistrate Judge made a finding that Juror Three "hesitated in answering . . . questions about the duty to deliberate." (ECF No. 29, at 46:3–5.) The Magistrate Judge therefore registered hesitation in *all* of Juror Three's responses, including those suggesting his willingness to deliberate.

To the extent the Magistrate Judge's finding regarding Juror Three's demeanor is construed as a finding of fact, the Court reviews that finding for clear error and finds none. *See Abbell*, 271 F.3d at 1303 ("[B]ecause the demeanor of the pertinent juror is important to juror misconduct determinations, the district court is uniquely situated to make the credibility determinations that must be made in cases like this one.").

[16] Juror Three's unwillingness to deliberate is similar to that of the juror removed in *United States v. Baker*, 262 F.3d 124 (2d Cir. 2001). There, "[l]ess than two hours" after jury deliberations began, the district court removed a juror after the jury panel submitted a note reading, "one juror . . . says that the evidence is not going to change her mind. She has a feeling and that's it. She refuses to deliberate on any of the counts. She won't even look at any of the evidence." 262 F.3d at 128. "Because the district court's reason for dismissing the juror was that the juror refused to participate in deliberations as required by her obligations as a juror . . . the trial court was within its discretion in removing the juror." *Id.* at 132. Again, much like Juror Three here, the *Baker* juror provided equivocal responses about her willingness to deliberate before ultimately noting that she had made up her mind. The Magistrate Judge here, like the district court in *Baker*, appropriately dismissed Juror Three.

*Baker* is not entirely on point because the Second Circuit employs a lower evidentiary standard: if the record evidence discloses *any* possibility that a complaint about a juror's conduct stems from the juror's view of the sufficiency of the government's evidence, the court must deny the request for dismissal of the juror. *United States v. Thomas*, 116 F.3d 606, 621–22 (2d Cir. 1997). This "any possibility" standard would normally allow a reviewing court to overturn a trial court's dismissal of a juror at a lower threshold of certainty. Despite this difference, the Court finds *Baker* persuasive. Even if the *Baker* court did not rely upon a "possibility" standard, the court's reasoning supports dismissing a juror where, as here, the juror provides equivocal responses (at best) regarding their willingness to deliberate.

26

To summarize, the jurors notified the Magistrate Judge of Juror Three's unwillingness to deliberate minutes after they retired to the jury room and before the evidence was sent to them. The Magistrate Judge's repeated attempts to instruct the jury to deliberate failed to encourage Juror Three to engage in deliberation. And during the Magistrate Judge's repeated individual polling, Juror Three was equivocal at best regarding his willingness to adhere to the Magistrate Judge's instructions and deliberate with his fellow jurors. Juror Three himself ultimately prevented any deliberation by removing himself from the other jurors. Juror Three's refusal to deliberate at the end—when he failed to do so from the start—supports a finding that it was neither reasonably possible nor substantially possible that Juror Three's hesitation stemmed from his consideration of the evidence on the merits. Finally, in her opinion denying Mr. Casanova's motion for a new trial, the Magistrate Judge applied both the reasonable and substantial standards[17] to conclude that her dismissal of Juror Three did not violate Mr. Casanova's Sixth Amendment rights. (ECF No. 44, at 14 n.2.) The Magistrate Judge's decision to dismiss Juror Three for cause was clearly not an abuse of discretion.

### 4.    Mr. Casanova Offers No Contrary Authority that Supports the Conclusion that he Engaged in Proper Deliberations

Mr. Casanova's argument in response does not persuade the Court otherwise. He asserts that "the jury's first note referred to disagreement on Count One only, meaning that Juror 3 agreed with the other jurors about Counts Two and Three." (ECF No. 57, at 9.) According to

---

[17] Other courts applying these standards have likewise concluded that where a juror either professes their unwillingness to follow instructions or a predisposition to disregard the evidence, dismissal of that juror is proper. *See, e.g., Kemp,* 500 F.3d at 305 (affirming trial court's decision to dismiss juror for bias while noting that juror's apparent refusal to deliberate "may well be a manifestation of underlying bias"); *Wilkerson,* 966 F.3d at 837 (affirming trial court's decision to dismiss juror who "three days after a two months-long trial . . . unambiguously indicated her disagreement with the law . . . without any reference to evidentiary concerns").

Mr. Casanova, "[t]he fact that Juror 3 agreed with the other jurors on Counts Two and Three establishes that he engaged in good-faith deliberations with the other jurors but respectfully disagreed with them on the one count." (ECF No. 57, at 9 (citation omitted).)  But the record does not bear out Mr. Casanova's characterization of the deliberations.  The Magistrate Judge received the first note alerting the court to Juror Three's decision regarding Count One only minutes after the jury retired for deliberations.  The record is properly read just as easily to suggest that Juror Three immediately staked out a position on all three counts without deliberation or irrespective of the evidence.  That is, the record could be read to indicate that Juror Three engaged in no deliberation at all in that time.  That Juror Three agreed with the other jurors on Counts Two and Three does not mean Juror Three *deliberated* with the other jurors as to those counts.

Ultimately, a juror's refusal to deliberate, or to follow the trial court's instructions to deliberate, is proper grounds for a dismissal for cause under Rule 23(b).  *See, e.g.*, *United States v. Brown*, 996 F.3d 1171, 1184 (11th Cir. 2021) ("It is well settled that good cause 'exists to dismiss a juror when that juror refuses to apply the law or to follow the court's instructions.'") (quoting *Abbell*, 271 F.3d at 1302); *United States v. Armstead*, 116 F.4th 519, 523 (D.C. Cir. 2024) ("A 'variety of issues' can support a finding of good cause [to dismiss a juror], 'including . . . jury misconduct,' [which] 'consists of actions by jurors that [are] contrary to their responsibilities.'") (quoting *United States v. McGill*, 815 F.3d 846, 866 (D.C. Cir. 2016) (last alteration in original)); *Hicks v. Anne Arundel Cnty.*, 110 F.4th 653, 660 (4th Cir. 2024) (determining that dismissal of juror prior to the start of deliberations under Fed. R. Crim. P. 47(c) was proper where juror "fail[ed] to follow the court's instructions").  The Magistrate Judge properly dismissed Juror Three because of his failure to deliberate in accordance with the

28

Magistrate Judge's instructions. The Magistrate Judge's justification for dismissing Juror Three was therefore "an independent, good-cause justification for removing the juror" that bore no "causal link" to Juror Three's "holdout status." *Laffitte*, 121 F.4th at 488 (citation omitted). Nothing in the record suggests otherwise.

**D.     The Court Sees Neither a Reasonable Nor a Substantial Possibility that the Magistrate Judge's Dismissal of Juror Three Stemmed from his Views of the Evidence**

At bottom, applying either formulation of the Sixth Amendment standard, the Court finds no violation of Mr. Casanova's right to an impartial jury. Certainly, no abuse of discretion occurred.

First, applying the "reasonable possibility" standard, "the available evidence is sufficient" to leave the Court "firmly convinced that the impetus for [Juror Three's] dismissal [was] unrelated to [his] position on the merits." *Symington*, 195 F.3d at 1087 n.5. Juror Three could not have reached a conclusion as to the sufficiency of the evidence given (1) his refusal to reenter the jury room, (2) the fact that he reached a conclusion before the jury received the evidence or instructions, and (3) his clear statement during polling that he was unwilling to engage with the evidence impartially. Moreover, the Magistrate Judge made clear that she dismissed Juror Three because of his unwillingness to deliberate with his fellow jurors. The record supported the Magistrate Judge's conclusion; Juror Three indicated his unwillingness to change his mind within minutes of beginning deliberation, refused to deliberate after repeated jury instructions, and at best equivocally suggested to the Magistrate Judge that he was capable of engaging in further deliberation. And Juror Three undercut his assertion that his opinion

29

"differed" from those of his fellow jurors by noting his unwillingness to engage in an impartial consideration of the evidence.

Second, applying the "substantial possibility" standard, the Court is convinced beyond a reasonable doubt that that the impetus for Juror Three's dismissal was unrelated to his position on the merits. *Abbell*, 271 F.3d at 1302–04. Any factual findings made by the Magistrate Judge showed no clear error, and her legal findings were sound. The Court sees no substantial possibility that the impetus behind Juror Three's dismissal stemmed from his position on the merits. Indeed, the Magistrate Judge's careful exploration of events established otherwise. The record leaves the Court without any reasonable doubts as to the impetus for Juror Three's removal.

### IV.  Conclusion

The Magistrate Judge properly dismissed Juror Three because of his failure to properly enunciate dissatisfaction with the merits and because of a failure to deliberate in accordance with the Magistrate Judge's instructions. Accordingly, the Court will affirm Mr. Casanova's conviction on Count One and dismiss the appeal.[18]

An appropriate Order shall issue.

Date: 8/3/26
Richmond, Virginia

_____ /s/
M. Hannah Lauck
Chief United States District Judge

---

[18] The parties also dispute whether, assuming the Magistrate Judge's dismissal of Juror Three was improper, the Court should apply a harmless error or structural error review standard. (ECF No. 57, at 10; ECF No. 58, at 16–18; ECF No. 59, at 4.)  Because the Court concludes that no Sixth Amendment violation occurred, the Court need not address what standard of review it would apply to such a violation.

30